RICHARD L. WESENBERG AND NANCY E. WESENBERG, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 561–76.    Filed March 29, 1978.

*Pipp M. Boyls*, for the petitioners.
*Fredrick B. Strothman*, for the respondent.

FAY, *Judge:* Respondent determined a deficiency in petitioners' Federal income tax for 1972 of $4,222, plus an addition to tax under section 6653(a)[1] of $211.

The issues for decision are: (1) Whether the purported conveyance by petitioner Richard L. Wesenberg of his lifetime services to a family trust was effective to shift the incidence of taxation on amounts representing compensation to him but paid to the trust; (2) whether certain income and expense items reported by the trust should have been included instead by petitioners on their Federal income tax return for 1972 under sections 671 through 677; (3) whether petitioners were entitled to deduct certain expenditures incurred by petitioner Richard L. Wesenberg in writing a book; and (4) whether any part of the underpayment (if such underpayment exists) of tax for 1972 was due to "negligence or intentional disregard of rules and regulations" within the meaning of section 6653(a).

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

---

[1]All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue.

At the time of filing the petition herein, Richard L. Wesenberg, M.D., and his wife, Nancy, resided in Denver, Colo. The couple filed a joint Federal income tax return for 1972 with the Internal Revenue Service Center in Ogden, Utah.

On March 23, 1972, Richard executed, as grantor, a trust instrument creating the Richard L. Wesenberg Family Estate (A Trust) (hereinafter referred to as the Trust). The trust instrument provided, in part, as follows:

> The above named Trustees, for themselves and their successors in trust, do hereby accept the conveyance in trust and acknowledge delivery of all the property specified, together with all the terms of the Trust herein set forth, agreeing to conserve and improve the Trust, to invest and reinvest the funds of said Trust in such manner as will increase the financial rating of the Trust (estate) during the period of outstanding liabilities of the various properties and enterprises in commerce for gain, exercising their best judgment and discretion, in accordance with the Trust minutes, *making distribution of portions of the proceeds and income as in their discretion,* and according to the minutes, *should be made,* making complete periodic reports of business transactions, and upon final liquidation distributing the assets to the beneficiaries as their interest may appear; and in all other respects administering said Trust (estate) in good faith strictly in conformity hereto.

*     *     *     *     *     *     *

> Powers of Trustees
> Trustees' powers shall be construed as general powers of citizens of the United States of America, to do anything any citizen may do in any state or country, subject to the restrictions herein noted. They shall continue in business, conserve the property, commercialize the resources, extend any established line of business in industry or investment, as herein specially noted, at their discretion for the benefit of this Trust, * * *
> *Resolutions of the Board of Trustees authorizing a special thing to be done shall be evidence that such act is within its power.* Any one lending or paying money to the Board of Trustees shall not be obliged to see the application thereof, all funds paid into the treasury are and become a part of the CORPUS of the Trust.

> Administration
> The Trustees shall regard this instrument as their sufficient guide, *supplemented from time to time by resolutions of their Board* [said resolution to be ratified ALWAYS by a MAJORITY of the Board of Trustees then in office and participating in the issuing meeting] *covering contingencies as they arise* and recorded in the minutes of their meetings, or by by-laws, rules or regulations, as deemed expedient and consistent with the orderly conduct of business. [Bracketed material in original.]
> [Emphasis supplied.]

*     *     *     *     *     *     *

Expenditures

The Trustees shall fix and pay compensation of all officers, employees or agents in their discretion, and may pay themselves such reasonable compensation for their services as may be determined by a MAJORITY of the Board of Trustees.

\* \* \* \* \* \* \*

### TRUSTEES' DECLARATION OF PURPOSE OF THIS CONSTITUTIONAL TRUST

SHALL BE—to accept the exclusive use of RICHARD LEE WESENBERG's lifetime services to include all of His earned remuneration from any source whatsoever and certain real and personal properties evidenced by affidavit, Deed, and Bill of Sale, in exchange for all of the beneficial interest (100 units) of THIS TRUST so that RICHARD LEE WESENBERG can maximize His lifetime efforts through the utilization of His Constitutional Rights; for the protection of His family in the pursuit of His happiness through His desire to promote the general Welfare, all of which RICHARD LEE WESENBERG feels He (or She) will achieve through the practice of His (or Her) RELIGION.

THE TRUSTEES by their resolution of purpose may perform and function for any purpose on behalf of any individual, group, or combination of any individuals, severally or collectively.

IN SUCH INSTANCES the powers and authority of the Trustees shall be defined and limited to the general purposes set forth by the Declaration of Trust.

\* \* \* \* \* \* \*

Duration—Closure

This Trust shall continue for a period of twenty-five years from date, unless the Trustees shall unanimously determine upon an earlier date. The Trustees may at their discretion, because of threatened depreciation in values, or other good and sufficient reason, liquidate the assets, distribute and close the Trust at any earlier date determined by them. The Trust shall be proportionately and in a pro rata manner distributed to the beneficiaries.

On April 18, 1972, petitioners executed documents purporting to sell and convey to the Trust their personal residence, numerous items of household furnishings, certain securities, and medical and life insurance policies covering petitioners. As an integral part of this transaction, the Trust assumed Richard's then outstanding debts and liabilities.

On the same date, Richard also executed a document purporting to convey to the Trust the exclusive use of his lifetime services and "all my earned and to be earned remuneration and all my right, title and interest in such earnings from my services rendered or to be rendered" to the University of Colorado Medical School and the Hoeber Medical Division of

Harper & Row Publishers, Inc. Shortly thereafter, Richard entered into an employment contract with,[2] and began working for, the University of Colorado Medical Center. At or about the time that he commenced work for the university, Richard notified the school of the purported conveyance and requested that all of his payroll checks thereafter be made payable to the Trust. In accordance with this request, the school issued checks in the amount of $23,895.75 to the Trust as payment for Richard's services during the remainder of 1972. In return, Richard received all 100 units of beneficial interest in the Trust. Such units of beneficial interest conveyed only a right to receive a pro rata share of any "emoluments" distributed at the discretion of a majority of the trustees. Richard, Nancy, and Marvin J. Roesler (Marvin), a colleague of Richard's, were designated as trustees in the trust instrument.[3]

Shortly after the creation of the Trust, the trustees held several meetings at which various resolutions affecting the administration of the Trust were adopted. At the third such meeting, Richard returned his certificate of ownership of all 100 units of beneficial interest for cancellation and reissuance of 30 units to each of his three minor children.[4] The record does not show the distribution of any income or corpus to the beneficiaries in 1972.

Richard and Nancy, at this third meeting, were employed as the executive manager and the executive secretary of the Trust, respectively. In their capacity as trustees, petitioners caused themselves to be furnished with a rent-free residence maintained by the Trust, and to receive a monthly consultant fee of $450.[5] Further, the Trust was to bear the cost of their health insurance, vacation expenses which were approved by them as trustees, beauty and barbershop expenses, and such other

---

[2]The contract was signed by Richard in his individual capacity and not on behalf of the Trust.

[3]On or about the time of the creation of the Trust, Marvin J. Roesler signed an undated resignation of his position as a trustee. Although present at the first few meetings of the trustees, he thereafter was no longer active in the affairs of the Trust. Apparently, his trustee position was for purpose of appearances only. Therefore, unless otherwise noted, when we hereafter refer to "trustees," we shall be referring to petitioners only.

[4]Ten units of beneficial interest were also reissued to an entity styled "The Wesenberg Educational Trust." The record is scant as to the purpose, terms, and beneficiaries of this trust and, therefore, it will not be discussed further.

[5]This amount could be increased by agreement between petitioners, as managers, and petitioners, as trustees.

incidental expenses which, in their opinion, as trustees, were in the "best interests" of the Trust.[6]

As cotrustee and executive manager, Richard filed a Federal fiduciary income tax return for 1972 for the Trust. In addition to the $23,895.75 received from the University of Colorado, the Trust reported as income a net capital gain of $3,596.92.

The expenses claimed by the Trust totaled $33,134.39 and were listed on the return as follows:

| Item | Amount |
|---|---|
| Interest | $3,774.00 |
| Taxes | 1,402.65 |
| Charitable deduction | 786.27 |
| Travel | 6,210.91 |
| Health care | 640.63 |
| Insurance | 2,247.60 |
| Housing provided as a convenience to employer | 13,672.33 |
| Consultant fees | 4,400.00 |

On their Federal income tax return for 1972, petitioners included as income amounts received by them prior to the creation of the Trust as well as $4,400 in consultant fees received by them for services rendered to the Trust.

During 1971 and 1972 Richard, a licensed physician, authored an illustrated book entitled "The Newborn Chest," which consisted of 296 pages devoted to the diagnosis and treatment of chest disorders in infants. As of the date of the trial of this case, Richard had received royalties from its sale of $7 to $8 thousand. In addition, expenses of $3,893[7] were incurred by Richard and deducted by petitioners on their 1972 return in connection with the writing and publication of the book.

In a statutory notice of deficiency, respondent increased petitioners' income by the amount which the University of Colorado paid to the Trust, and decreased their income for the consulting fees paid by the Trust to petitioners. Further, respondent determined that the capital gains and losses reported by the Trust were properly reportable by petitioners. In

---

[6] Items found to be in the "best interests" of the trust included such things as a sports coat, life insurance, and an item identified in the record only as a "globe swag."

[7] This amount included expenditures for such items as secretarial assistance, supplies, photocopying, photography, telephone, as well as auto and office expense.

addition, respondent determined that the expenses deducted by the Trust should have been deducted by petitioners but limited to the amount of $5,894.45. Finally, of the $3,893 deducted by petitioners in connection with the writing of Richard's book, respondent disallowed all but $139.

## OPINION

The first issue we must decide is whether the purported conveyance by Richard of his lifetime services to a family trust was effective to shift the incidence of taxation on amounts representing compensation to him but paid to the Trust. Briefly stated, it is respondent's contention that the attempted conveyance by Richard constituted an anticipatory assignment of income, and therefore petitioners must report as gross income the compensation owed Richard but paid to the Trust by the school. We agree with respondent.

Described by the Supreme Court as the "first principle of income taxation" is the old saw: that income must be taxed to the one who earns it. *Commissioner v. Culbertson*, 337 U.S. 733, 739–740 (1949). Notwithstanding their validity under State law, contractual arrangements that are designed to circumvent this maxim, by attempting to deflect income away from the one who earns it, will not be recognized as determinative for Federal income tax purposes. *Lucas v. Earl*, 281 U.S. 111 (1930). In this regard, it matters not whether the ultimate recipient of the diverted income is an individual or, as in the present case, an entity. *United States v. Basye*, 410 U.S. 441, 449 (1973). The underlying and more difficult question, however, is the determination of who, in fact, *controls* the earning of the income. *American Savings Bank v. Commissioner*, 56 T.C. 828, 839 (1971).

Presumably,[8] it is petitioners' contention that Richard was a servant or agent of the Trust, and therefore the income paid for the performance of his services is taxable to the Trust.

After careful examination of all the surrounding facts and circumstances, we believe that the ultimate direction and control

---

[8]At the close of the trial in this case, the Court requested that the parties file original simultaneous briefs by June 6, 1977, and reply briefs thereafter on July 21, 1977. Failing to receive an original brief from petitioners on the designated date, the Court notified petitioners' counsel of such fact and requested that a brief be filed. As of July 8, 1977, the Court still had not received a brief from petitioners' counsel, and at that time issued an order closing the record in this case.

over the earning of the compensation rested in Richard and not in the Trust. While Richard may have conveyed, at least in form, his services to the Trust, in substance he was not a bona fide servant or agent of the Trust with respect to the services he rendered to the school.

To begin, Richard, and not the Trust, was obliged under a contract with the school to provide services which were inherently personal in nature to him. We seriously question whether the Trust could (or that Richard ever intended that it be able to do so) obligate Richard to perform these services or interfere with his contractual arrangement with the school. Furthermore, it was the school, and not the Trust, which determined Richard's salary and supervised his employment. See *American Savings Bank v. Commissioner, supra; Roubik v. Commissioner*, 53 T.C. 365 (1969).

Accordingly, we hold that Richard's conveyance of his lifetime services, and the income earned through the performance of those services, was simply an assignment of income and ineffective to shift the tax burden thereon from petitioners to the Trust. Thus, the total amount paid to the Trust by the school for Richard's services was includable in petitioners' gross income.[9]

The second issue for decision is whether certain income and expense items were reportable for Federal income tax purposes by the petitioners or by the Trust.[10]

At the outset we note that although respondent contends that the income and expense items in issue are reportable by petitioners, he does not argue—and in view of the record, we believe correctly so—that the existence of the Trust established by petitioners should be disregarded for Federal income tax purposes. Rather, it is respondent's contention that these items are properly reportable by petitioners because the Trust is governed entirely by the so-called "grantor trust rules." We agree with this contention.

---

[9]As stated above, petitioners filed no brief in this case. However, in reaching our conclusions with respect to this first issue, we considered the arguments raised by taxpayers similarly situated in *Damm v. Commissioner*, T.C. Memo. 1977–194, and *Horvat v. Commissioner*, T.C. Memo. 1977–104. In those cases we rejected the arguments proffered by the taxpayers, and, had petitioners raised the same contentions in the present case, we likewise would have rejected them for the same reasons.

[10]This second issue deals with those items set out in our findings of fact which were reported on the Federal fiduciary income tax return filed for the Trust other than the income item covered in our discussion of the first issue.

Ordinarily, the income taxation of trusts is controlled by sections 641 through 668 of subchapter J of the Code. However, where the grantor of a trust retains certain powers enumerated in sections 673 through 677, then, for income tax purposes, he is treated as the "owner" of that portion of the trust over which the proscribed powers extend. Where the grantor is so treated, section 671 includes in the grantor's income "those items of income, deductions, and credits * * * of the trust which are attributable to that portion of the trust to the extent that such items would be taken into account * * * in computing taxable income or credits * * * of an individual."

In ascertaining whether a particular power retained by the grantor is within the group of powers proscribed by the statute, it is usually necessary to first determine if the power is exercisable by the grantor with or without the consent of an "adverse party." The term "adverse party" is defined in section 672(a) as "any person having a substantial beneficial interest in the trust which would be adversely affected by the exercise or nonexercise of the power which he possesses respecting the trust." While under this definition the beneficiaries of the Trust would be adverse parties, the trust instrument did not require their consent or approval prior to the exercise of any powers granted under the Trust. With respect to Marvin and Nancy, neither had a direct beneficial interest in the Trust. Furthermore, their interest in the Trust as cotrustees does not make them adverse with respect to the exercise of any power in conjunction with Richard. Sec. 1.672(a)–1(a), Income Tax Regs. Nor does the record indicate that Marvin and Nancy were otherwise adverse parties. Therefore, none of the powers vested in Richard and his cotrustees required, as a precondition to its exercise, the consent or approval of an "adverse party."

Next, we must decide whether the powers held by Richard were within those proscribed by the statute, and, if so, over what portion of the Trust he is deemed owner.[11]

Section 674(a) provides that the grantor shall be treated as the "owner of any portion of a trust in respect of which the beneficial enjoyment of the corpus or the income therefrom is subject to a power of disposition, exercisable by the grantor or a

---

[11] "Portion" could include part or all of a trust depending upon the extent of a person's rights over its income and corpus. See sec. 1.671–3, Income Tax Regs.

nonadverse party, or both, without the approval or consent of any adverse party."

Under the terms of the Trust, petitioners, as a majority of the trustees, had the authority to adopt resolutions affecting the administration of the Trust "covering contingencies as they arise." In this regard, the Trust further provided: "Resolutions of the Board of Trustees authorizing a special thing to be done shall be evidence that such act is within its power." While this language would not of itself cause Richard to be considered the "owner" of any portion of the Trust,[12] when this grant of authority is viewed in the light of its apparent interpretation by the trustees, together with the fact that petitioners presented no evidence to show that this power was in any way restricted, we believe that Richard, in conjunction with two nonadverse parties, could control and dispose of the beneficial interest of the entire trust corpus and income. See *Gurich v. Commissioner*, 295 F.2d 845 (1st Cir. 1961).

Moreover, the record clearly establishes that Richard used this control for his own benefit. For example, a resolution was adopted by the trustees in which petitioners were "employed" as managers of the Trust. Specifically, the Trust furnished them with a rent-free residence maintained by the Trust and a monthly consultant fee which was determined solely by petitioners. In addition, petitioners caused the Trust to pay for their health care, beauty and barbershop expenses, vacation expenses, and for any other personal expenses of petitioners which they agreed were in the "best interests" of the Trust.[13]

Based on these facts, and because the beneficiaries were entitled to receive nothing unless the trustees in their sole discretion determined otherwise, we hold that Richard possessed control over the disposition of the corpus and income of the Trust sufficient to cause him to be treated as the "owner" thereof under section 674(a) for purposes of section 671. Thus, all of the items of income and expenses reported by the Trust are includable in petitioners' return for 1972.

In the alternative we believe our holding is compelled by section 676 or 677.

Section 676(a) treats the grantor as the "owner" of any

---

[12] We are cognizant of the fact that trustees are subject to certain duties and limitations imposed by local law. See *Gurich v. Commissioner*, 295 F.2d 845 (1st Cir. 1961).

[13] See n. 6 *supra*.

portion of a trust "where at any time the power to revest in the grantor title to such portion is exercisable by the grantor or a nonadverse party, or both."

As stated above, Richard had complete control over the disposition of the Trust's assets through the Trust provision which permitted the trustees to adopt resolutions to cover contingencies. The manner of the exercise of this power by the trustees was tantamount to a power of revocation, and accordingly, Richard, under section 676(a), is treated as the "owner" of the entire Trust. See *de Amodio v. Commissioner*, 34 T.C. 894 (1960), affd. 299 F.2d 623 (3d Cir. 1962).

Section 677(a) generally provides that the grantor shall be treated as the owner of any portion of a trust whose income without the approval or consent of any adverse party is, or in the discretion of the grantor or nonadverse party, or both, may be distributed to, or accumulated for future distribution to, the grantor or the grantor's spouse.

While the trust instrument does not specifically provide for the distribution of income to petitioners, under the "contingency" power, the trustees had the authority to discharge Richard's obligations of medical care, life insurance, and housing.[14] Because there were no restrictions in the Trust on the use of its income or corpus to satisfy these obligations, we conclude Richard should be treated as the "owner" of the entire Trust under section 677(a).

In his statutory notice, respondent reduced or disallowed entirely some of the deductions of the Trust which he reallocated to petitioners. Respondent's determination as to the amount of the allowable deductions is not challenged by petitioners, and it will therefore be sustained.

The next issue for decision concerns the amount of expenses incurred by Richard and deducted by petitioners in connection with Richard's writing a book. Respondent's only argument for disallowing a major portion of the deduction is that petitioners have failed to substantiate such expenses. We do not agree.

In support of their claimed deduction, petitioners, at the trial of this case, presented Richard's testimony as to the amount of time and expenses incurred by him in writing the book. This

---

[14]Futhermore, although the amount is not in the record Richard specifically "assigned" all of his debts which existed at its creation to the Trust.

testimony was corroborated by the introduction into evidence of a copy of the 296-page publication which contained numerous photographic illustrations. After viewing Richard's demeanor, and because the evidence offered was wholly uncontradicted, we believe petitioners have met their burden of proof, and accordingly are entitled to the full amount of the deduction claimed by them.

The final issue for decision is whether petitioners are liable for an addition to tax under section 6653(a) for 1972. In view of the egregious facts of this case, and petitioners' failure to introduce any evidence on this point, we cannot say respondent erred in his determination that "any part of the underpayment" was due to "negligence or intentional disregard of rules and regulations" within the meaning of section 6653(a). Indeed, considering Richard's education and intellectual ability, we find it difficult to believe that he envisioned the Trust as anything other than a flagrant tax avoidance scheme.

To reflect the foregoing,

*Decision will be entered under Rule 155.*