EDWARD WESEL AND EVELYN WESEL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; EDWARD WESEL AND EVELYN M. WESEL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wesel v. Commissioner
Docket Nos. 2192-78, 7027-78.
United States Tax Court
T.C. Memo 1980-438; 1980 Tax Ct. Memo LEXIS 151; 41 T.C.M. (CCH) 94; T.C.M. (RIA) 80438; September 29, 1980, Filed Joseph W. Weigel, for the petitioners. Harry K. Friedman, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner, in his statutory notice of deficiency, determined the following deficiencies in the Federal *153 income tax of petitioners: Docket
Taxable
Additions to Tax
Additions to Tax
No.
Year
Deficiency
Sec. 6651(a)(1) [1]
Sec. 6653(a)
2192-78
1974
$2,098
0
0
7027-78
1975
3,240
$159
$162
7027-78
1976
2,688
0
134
Due to concessions, the issues remaining for decision are: 1. Whether amounts paid during the taxable years in issue for employee services by Harnischfeger Corporation to Petitioner Edward Wesel and transferred by him to a family trust which he created were properly includable in petitioners' gross income; 2. Whether other items of income which were reported by the family trust were properly includable in petitioners' gross income; 3. Whether interest paid on a savings account in the name of Petitioner Edward Wesel was properly includable in petitioners' gross income; 4. Whether petitioners' failure to timely file a Federal income tax return for 1975 was due to reasonable cause within the meaning of section 6651(a); and 5. Whether any part of the underpayment of tax for 1975 and 1976 was due to negligence or intention disregard of *154 rules and regulations within the meaning of section 6653(a). FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioners filed joint Federal income tax returns for the taxable years 1974, 1975 and 1976 with the Internal Revenue Service Center, Kansas City, Missouri. The 1975 return was received by the service center on April 27, 1976. At the time the petitioners were filed in this proceeding, petitioners resided in the State of Wisconsin. On February 22, 1974, Petitioner Edward Wesel (hereinafter petitioner), as grantor, created a trust, the "Edward Wesel Family Estate (A Trust)" (hereinafter referred to as "the Trust"). The initial trustees of the trust were Petitioner Evelyn Wesel (hereinafter Evelyn) and William Behling. William Behling is not related to the petitioners. The declared purpose of the trust was to accept legal title to all property which the grantor conveyed to it, including: the exclusive use of his lifetime services and ALL of his EARNED REMUNERATION ACCRUING THEREFROM from any current source whatsoever, so that Edward Wesel can maximize his *155 lifetime efforts through the utilization of his Constitutional Rights; for the protection of his family in the pursuit of his happiness through his desire to promote the general welfare all of which Edward Wesel feels he will achieve because they are sustained by his RELIGIOUS BELIEFS. Decisions in connection with the Trust were to be made by a majority of the trustees. Upon liquidation of the Trust, its assets were to be distributed to the beneficiaries in proportion to their interests. The Trust was to continue for 25 years, except that the trustees could, by unanimous vote, terminate and liquidate it at any prior time. The trustees agreed to, in the exercise of their best judgment and discretion, conserve and increase the value of the Trust's assets, "making distributions of portions of the proceeds and income as in their discretion * * * should be made * * *." On February 23, 1974, petitioner conveyed to the Trust certain of real and personal property, some of which his wife previously transferred to him. He also executed a document containing the following language: I, EDWARD WESEL, * * * hereby convey to THIS TRUST * * * the exclusive use of my lifetime services and *156 all of the currently earned remuneration accruing therefrom. As stated previously, the initial trustees (named in the Declaration of Trust) were Evelyn Wesel and William Behling; however, on the same day the Trust was created (February 22, 1974), petitioner was elected "Executive Trustee" of the Trust, and was accordingly given authority to "[manage] the day-to-day business affairs of THIS TRUST * * * keeping the accounts, pay the bills accruing and collect all moneys due the Trust * * *." On July 30, 1975, William Behling resigned as a trustee. On September 1, 1975, Dorothy Lynch, petitioner's sister, was elected a trustee of the Trust. One-hundred units of beneficial interest represent 100 percent of the beneficial interest in the Trust. From the creation of the Trust to July 17, 1976, Petitioner and Evelyn each held 50 units. On that date, petitioner conveyed ten of his units to Dorothy Lynch. Thus, from February 22, 1974, to July 17, 1976, Evelyn and Edward Wesel each held a 50 percent beneficial interest in the Trust; from and after July 17, 1976, Evelyn Wesel held a 50 percent beneficial interest, Edward Wesel a 40 percent beneficial interest, and Dorothy Lynch a *157 10 percent beneficial interest. The Trust established separate bank accounts in its own name, and authorized the payment to Edward Wesel of "consultant fees" for the services he performed for the Trust. The Trust paid, in each taxable year in issue, certain personal or family expenses of the petitioners. The trustees authorized and directed the payment of a Bar Mitzvah gift and the purchase of an air conditioner for the health and comfort of the petitioners. The Trust filed Fiduciary Income Tax Returns (Form 1041) for the taxable years 1974, 1975 and 1976 with the Internal Revenue Service Center at Kansas City, Missouri. Petitioner was an employee of Harnischfeger Corporation (hereinafter Harnischfeger) from September 1963 through the taxable years in issue. He worked as a shop clerk, which involved timekeeping and recordkeeping for hourly employees. Following the creation of the Trust, there was no change in the services and duties he performed for Harnischfeger. He continued to be supervised by Harnischfeger personnel, and Harnischfeger continued to make pay checks payable to him. However, upon receipt of the checks, he would endorse them over to the Trust and deposit *158 them in a Trust bank account. At the end of each taxable year in question, Harnischfeger sent petitioner a Form W-2 indicating the total wages paid him that year. This amount was included in petitioners' gross income on their joint returns for those years. For 1974, petitioners deducted as an "adjustment to income" all wages paid by Harnischfeger to petitioner after February 22, 1974. For 1975 and 1976, petitioners deducted in this manner all amounts indicated on the Forms W-2 for those years. In addition, for 1976, petitioners included in gross income and then deducted as an "adjustment to income" interest earned on a savings account maintained in petitioner's name. For the taxable years 1974, 1975 and 1976, petitioners reported as "income other than wages, dividends, and interest" consultant fees paid to petitioner by the Trust. For the taxable years 1974, 1975 and 1976, the Trust reported as income the wages paid by Harnischfeger to petitioner which he and Evelyn had deducted on their joint returns for those years. For 1974, the Trust reported interest income of $110 and "Educ. Trust Income" of $360. The $110 represented interest earned on a savings account in the *159 name of the Trust; the $360 represented money paid to the Trust for the activities of petitioners in recruiting new participants to the Trust program. For 1975, the Trust reported interest income of $42.53, which represented interest earned on a savings account in the name of the Trust. The respondent, in his notice of deficiency, reallocated all of the above items reported as income by the Trust to petitioners. Respondent concedes that, should his position be upheld, petitioners may exclude from income the amounts they included in income in 1974, 1975 and 1976 as consultant fees from the Trust. OPINION Issue 1. Harnischfeger Income
A fundamental principle of Federal income tax law is that income is taxed to the one who earns it. Commissioner v. Culbertson, 337 U.S. 733, 739-740 (1949). Arrangements by which income is diverted from its true earner to another entity are not recognized for Federal income tax purposes, even though they may be valid under state law. Lucas v. Earl, 281 U.S. 111 (1930). Income is properly taxable to the person or entity who in fact controls its earning, not necessarily the one who ultimately receives it. *160 American Savings Bank v. Commissioner, 56 T.C. 828, 839 (1971). Despite the complex legal maneuvering undertaken by the petitioners in connection with the Trust, the fact remains that petitioner, and not the Trust, was the one who earned his ages from Harnischfeger during the years in issue. He, not the Trust, controlled the earning of his income from Harnischfeger. We hold that all amounts paid to petitioner by Harnischfeger and transferred by him to the Trust were properly includable in petitioners' gross income. Other cases arriving at the same conclusion on materially indistinguishable facts are Wesenberg v. Commissioner, 69 T.C. 1005 (1978); Vercio v. Commissioner, 73 T.C. 1246 (1980); Horvat v. Commissioner, T.C. Memo. 1977-104, affirmed in an unpublished opinion (7th Cir. 1978), cert. denied 440 U.S. 959 (1979); Vnuk v. Commissioner,     F.2d     (8th Cir., Jul. 11, 1980), 46 AFTR 2d 80-5095, 80-2 USTC par. 9575, affg. a Memorandum Opinion of this Court. Issue 2. Other Income Reported by the Trust
We next decide whether the items reported by the Trust as interest *161 income ($110 for 1974; $42.53 for 1975) and as "Educ. Trust Income" ($360 for 1974) were properly includable in petitioners' gross income. We do not understand respondent to argue that the Trust lacks economic substance and should be disregarded as merely a "sham" for Federal income tax purposes and hence do not address this issue. Rather, respondent contends that these items are taxable to petitioners under the "Grantor Trust" provisions of the Code, sections 671-677. We agree. Under section 671, when a grantor is characterized as the "owner" of any part of a trust pursuant to sections 673-677, all items of trust income attributable to that part are included in his gross income. Although respondent contends that multiple grantor trust provisions require that petitioner be treated as the owner of the trust, we need only look to section 677, which provides: (a) GENERAL RULE.--The grantor shall be treated as the owner of any portion of a trust, * * * whose income without the approval or consent of any adverse party is, or, in the discretion of the grantor or a nonadverse party, or both, may be-- (1) distributed to the grantor or the grantor's spouse; By the terms of the Trust, *162 a majority of the trustees could make whatever distributions of trust income "as in their discretion should be made * * *." Thus, petitioner and one other trustee could have, at any time subsequent to the creation of the Trust, caused all of the Trust income to be distributed to himself or his wife, because at no time were there more than three trustees. In fact, the Trust actually paid personal and family expenses of the petitioners in each of the taxable years in issue. Section 672 defines an "adverse party" as "any person having a substantial beneficial interest in the trust which would be adversely affected by the exercise or non-exercise of the power which he possesses respecting the trust." It is clear that Evelyn, who was at all relevant times a trustee, was never an adverse party. As we said in Vercio v. Commissioner,supra at 1258: "We cannot conceive of a situation where the grantor's spouse would be motivated to prevent an application of income from a trust for that spouse's benefit." Thus, petitioner, the grantor, and Evelyn, a "nonadverse party," could have caused all of the income of the Trust to be distributed to them without the approval or *163 consent of an adverse party. Consequently, all items of income considered here were properly includable in petitioners' gross income. Issue 3. Interest Income on Savings Account in Edward Wesel's Name
We next consider whether the interest paid in 1976 on a savings account maintained in the name of Edward Wesel was properly taxable to petitioners. Petitioners argue on brief that the account really belonged to the Trust and thus the income was taxable to it. They present absolutely no evidence in support of this assertion and hence have not satisfied their burden of proving that the respondent's determination was incorrect. Rules 142(a), 149(b), Tax Court Rules of Practice and Procedure. Even if the account were owned by the Trust, however, the interest earned thereon would have still been attributable to petitioners under section 677 as discussed above under Issue 2. Therefore, the interest was properly includable in petitioners' gross income. Issue 4. Failure to Timely File 1975 Return
Petitioners' 1975 return was not received by the Internal Revenue Service Center until April 27, 1976. Under section 6072, the due date for filing the return was April 15. Section *164 7502(a) provides that a return is deemed timely filed if it is properly mailed to the Internal Revenue Service on or before the due date. Section 6651(a) imposes an addition to tax for failure to timely file a return "unless it is shown that such failure is due to reasonable cause and not due to willful neglect." Petitioners have presented no evidence of either timely mailing or of reasonable cause for failure to timely file. In fact, they do not argue the point on brief. We must sustain respondent's determination that the 1975 return was filed late without reasonable cause. Issue 5. Negligence Penalty
We finally decide whether the negligence penalty asserted pursuant to section 6653(a) [2] was appropriate. A review of the record as a whole persuades us that the trust arrangement was "a flagrant tax avoidance scheme." Wesenberg v. Commissioner, 69 T.C. 1005, 1015 (1978). Petitioner Edward Wesel is an intelligent person; he held a responsible job as a shop clerk for many years which entailed computations and reporting. We are convinced that he realized that he could not avoid the imposition of income tax on his earnings by assigning them to a trust; if he *165 did not, we think that a prudent man would have consulted one knowledgeable in the tax laws prior to entering such complex arrangements. The fact that Edward Wesel was himself not "any kind of a tax expert," as petitioners argue on brief, is irrelevant. We accordingly sustain respondent's determination that part of petitioners' underpayment of tax for 1975 and 1976 was due to negligence. Due to concessions, Decisions will be entitled under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended.↩
2. Sec. 6653(a) provides: If any part of any underpayment * * * of any tax imposed by subtitle A * * * is due to negligence or intentional disregard of rules and regulations * * * there shall be added to the tax an amount equal to 5 percent of the underpayment.↩