LARRY W. BENSON AND JUNE E. BENSON, PETITIONERS
v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7331–79.     Filed June 22, 1981.

*Edward J. Sutkowski* and *David J. Duez,* for the petitioners.
*John J. Morrison,* for the respondent.

FAY, *Judge*: Respondent determined deficiencies of $7,225 and $6,732 in petitioners' Federal income taxes for 1974 and 1975, respectively. The only issue for decision is what part of a trust created by petitioner-husband is to be treated as being owned by him during 1974 and 1975 under section 675(3).[1]

## FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

Petitioners Larry W. Benson and June E. Benson, husband and wife, were residents of Peoria, Ill., when they filed their petition in this case.

After earning a degree in marketing at Wartburg College, petitioner Larry Benson began working for Maytag. While in Peoria, Ill., on a special project, he became interested in opening his own business in the Peoria area. Petitioners opened a home appliance center in Peoria in January 1966. Petitioners have been very successful; they currently own and operate two retail appliance centers and three laundromats. However, it is the first home appliance center which is important to this case, and that is the one to which we will refer.

Petitioners initially operated their business on rented prem-

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended.

ises. In 1968 and 1969, they acquired two contiguous tracts of land in Peoria County for about $28,000. Subsequently, they erected a building and other improvements on the land at a cost of $120,624. The real estate as thus improved shall hereinafter be referred to as the "property." In March 1970, petitioners moved their appliance business from the rented premises to the "property."

On January 1, 1972, petitioners leased the "property" to Benson's Maytag, Inc., petitioner Larry Benson's wholly owned corporation. The lease, which runs until June 30, 1982, calls for a monthly rent of $1,700.

On March 31, 1972, petitioners, by quitclaim deeds, transferred the "property" to the "L. William Benson Short Term Irrevocable Trust," a trust created by petitioner Larry Benson on the same date.[2] Petitioner June Benson was named trustee of the trust. The trust is to terminate 10 years and 10 days after the last contribution to it is made. All net trust income is to be paid annually to petitioners' four children or for their benefit with all capital gains and losses being allocated to principal.[3] When the trust terminates, all accrued but undistributed net income will be distributed to the children or to the children's appointees, while the trust principal will revert to petitioner Larry Benson.[4]

Petitioner June Benson, as trustee, has the power to invest, sell, or exchange trust property and the power to borrow money pledging trust property as security. Additionally she may as trustee, "loan trust property to any person with provision for reasonable interest and security."

Evidently the only asset ever transferred to the trust was the "property" which housed the home appliance center. Therefore,

---

[2] At the time the "property" was transferred to the trust, it was subject to a mortgage executed by petitioners on Sept. 30, 1971. Petitioners remained personally liable and continued to make the mortgage payments after the transfer.

[3] When the trust was created, all petitioners' children were minors, each being under 8 years of age. Thus, according to the trust terms, the children were considered "incapacitated." Their status as such gave the trustee, petitioner June Benson, the right to distribute the income either to the children, to their parents (petitioners), to their custodian, guardian, or conservator, or to anyone with whom the children resided. The trust expressly absolves the actual recipient of the distribution from responsibility for its expenditure.

[4] Since the trust requires annual distribution of all net income, the only accrued income should be year-of-termination income not yet distributed to the children at the time the trust terminates.

the rents paid by Benson's Maytag, Inc., were the trust's only source of income.[5] When the "property" was transferred to the trust, its fair market value was $200,000. Its fair market value was approximately $295,000 on January 1, 1974, and approximately $325,000 on January 1, 1975.

Petitioner June Benson, as trustee, made several loans to petitioner Larry Benson. Each of those loans was unsecured, bore interest of 8 percent, and was represented by a promissory demand note.[6] The loans were as follows:

| Date of loan | Amount |
|---|---|
| May 1, 1973 | $17,215 |
| Sept. 1, 1974 | 5,000 |
| Sept. 1, 1974 | 1,500 |
| Nov. 1, 1974 | 24,000 |

No payments on the loans were made before January 1, 1976. The loans, including accrued interest, were paid in full on December 30, 1977. The total principal and interest amounts outstanding at the beginning of the taxable years involved herein were as follows:

| | Principal | Interest | Total |
|---|---|---|---|
| Jan. 1, 1974 | $17,215 | 916.87 | $18,131.87 |
| Jan. 1, 1975 | 47,715 | 2,782.06 | 50,497.06 |

The trust reported the following income and deductions on its returns for 1973, 1974, and 1975:

| | Income | Taxes | Depreciation | Distributions |
|---|---|---|---|---|
| 1973 | [7] $22,150 | ($5,097) | ($3,016) | $14,037 |
| 1974 | 20,400 | (3,619) | --- | 16,781 |
| 1975 | 20,400 | (3,724) | --- | 16,676 |

Thus, the trust reported zero taxable income for each of those 3 years.

---

[5]Certain facts in this case indicate that the trust might have had additional assets and income. See note 7 *infra*. However, petitioners bear the burden of proof (see note 20 *infra*), and they presented no evidence concerning any trust assets other than the "property."

[6]The notes were executed by L. William Benson (petitioner Larry Benson) d. b. a. Benson's Leasing.

[7]The record does not show how the trust had $22,150 of income in 1973 which is $1,750 more than the $20,400 which should have resulted from 12 monthly rental payments from Benson's Maytag, Inc.

Although distribution deductions were taken, the beneficiary children received no money or property from the trust.[8] All net trust receipts until November 1, 1974, were loaned to petitioner Larry Benson.

In his statutory notice of deficiency, respondent determined that petitioner Larry Benson should be treated as owning the entire trust during 1974 and 1975. Thus, per section 671, respondent increased petitioners' gross income by the amount of the trust's income, $20,400, in each of those years and allowed petitioners those deductions otherwise allowable to the trust.[9]

OPINION

The only issue for decision is what part of a trust created by petitioner-husband is to be treated as being owned by him during 1974 and 1975 as a result of loans made by the trust to him. Petitioner-husband, a trust grantor, borrowed trust funds without security and did not repay the loans before the beginning of 1974 or before the beginning of 1975, the taxable years involved herein. Thus, under section 675(3), the "portion of [the] trust in respect of which" petitioner-husband borrowed is treated as being owned by petitioner-husband.[10] The parties disagree as to what "portion" means.

Petitioners contend that "portion" refers to the part of the trust borrowed in comparison to the entire trust. Accordingly, they maintain that the part of the trust income taxable to them is an amount which bears the same ratio to the trust's entire income as the amount of loans, including interest, outstanding at the beginning of the taxable year bears to the fair market value of the trust at the beginning of the taxable year. Respondent argues that "portion" means the entire trust whenever a grantor has the power to borrow all corpus or income and any trust

---

[8]The trust filed its tax returns as a simple trust each year. See sec. 651(a)(1).

[9]Although the trust did not claim any depreciation deductions in 1974 or 1975, respondent has allowed petitioners those deductions.

[10]Sec. 675(3) provides as follows:

The [trust] grantor shall be treated as the owner of any *portion* of a trust in respect of which—

    *       *       *       *       *       *       *

(3) BORROWING OF THE TRUST FUNDS.—The grantor has directly or indirectly borrowed the corpus or income and has not completely repaid the loan, including any interest, before the beginning of the taxable year. * * *

[Emphasis added.]

property is borrowed. Alternatively, respondent contends that "portion" is a fraction arrived at by dividing the amount borrowed, including interest, by the trust's income for the year calculated without the sections 651 and 661 distribution deductions.[11] We do not adopt respondent's analysis but sustain his determination in this case for the reasons below.

Section 675 is one of a series of Internal Revenue Code sections collectively known as the grantor trust rules. See secs. 671 through 679. Sections 673 through 677 enumerate the instances in which a trust grantor is treated as owning all or part of a trust. For tax purposes, a grantor is credited with the trust income, deductions, and credits allocable to the trust "portion" he is treated as owning. Sec. 671. The purpose of those grantor trust rules is to tax a trust grantor on trust items over which he has retained substantial dominion and control, see section 1.671–2(b), Income Tax Regs., and it is with that purpose in mind that we interpret section 675(3) and "portion."

At the outset, we note that while "portion" is used throughout the Code sections comprising the grantor trust rules, its meaning varies from section to section and from case to case. Sec. 1.671–3, Income Tax Regs.[12] "Portion's" flexible meaning is necessary to fulfill the purpose of the grantor trust rules—taxation of a grantor only on trust items over which he has retained substantial dominion and control. See sec. 1.671–2(b), Income Tax Regs. Given a myriad of dispositive variables, "portion" must have an adaptable meaning. For example, under section 676, a trust grantor is treated as owning any trust "portion" which he can revoke. If the grantor can revoke the entire trust, then "portion"

---

[11] Respondent also contends that the trust is a "sham" for tax purposes. Sec. 671 provides: "No items of a trust shall be included in computing the taxable income and credits of the grantor or of any other person solely on the grounds of his dominion and control under section 61 * * * or any other provision of this title, except as specified in this subpart."

Thus, income of a trust is not attributed to the trust grantor because of the grantor's dominion and control over the trust unless one of the specific grantor trust rules, see secs. 673–677, or assignment of income principles applies. See sec. 1.671–1(c), Income Tax Regs. That rule allows taxpayers to plan their affairs knowing the tax results. Accordingly, we prefer to decide this case under the well-established grantor trust rules. See *Wesenberg v. Commissioner*, 69 T.C. 1005, 1011 (1978).

[12] The regulations recognize six possible meanings of "portion": the entire trust; the trust accounting income; the trust corpus; a fraction or dollar amount of trust accounting income; a fraction or dollar amount of corpus; or specific trust property. See sec. 1.671–3(a) to (c), Income Tax Regs. See also, Schmolka, "Selected Aspects of the Grantor Trust Rules," U. Miami 9th Inst. on Estate Planning par. 1400 (1975).

means the entire trust. However, if the grantor can revoke only the remainder interest and has no power to alter the income interest, "portion" means only the remainder interest, since the grantor has no power over the income interest and should not be taxed on it. See sec. 1.671–3(b)(2), Income Tax Regs.

In determining what "portion" of a trust should be treated as being owned by its grantor, most of the grantor trust rules focus on powers set forth in the trust instrument which evidence a grantor's dominion and control over trust property without regard to whether or not those powers are ever exercised.[18] In most cases, it is fairly simple to tell over what part of a trust a power extends; therefore, the meaning of "portion" is easily decided. For example, if a grantor has the power to distribute the entire trust to his spouse, the entire trust is treated as his even if only part of the trust is actually so distributed. See sec. 677(a)(1). On the other hand, if a grantor has the power to distribute only current income to his spouse, he is treated as owning only the current income interest in the trust. In the latter case, "portion" means only the current income interest, because that is the only trust segment over which the grantor has any power.

Section 675(3) differs from the other provisions which provide rules for determining grantor ownership of a trust, because it requires an affirmative act, borrowing, rather than a mere power, before it applies.[14] Nevertheless, the same theme underlies section 675(3) as underlies the other Code sections which treat a grantor as owning the trust. In both cases, the justification for taxation of the grantor is evidence of substantial grantor dominion and control. Thus, our proper inquiry is not what the grantor has borrowed but what the grantor's borrowing represents in terms of the grantor's dominion and control over the trust.

In order fully to understand the implications of grantor borrowing, section 675(3) must be read in conjunction with section 675(2). Section 675(2) treats a grantor as the owner of the

---

[18]See, e.g., secs. 674; 675(1), (2), and (4); 676; 677(a).

[14]See also sec. 677(b), which applies when trust income is actually used, pursuant to a discretionary power, to support or maintain a beneficiary, other than the grantor's spouse, whom the grantor is legally obligated to support or maintain. That section clearly limits taxation of the grantor to income actually so applied.

trust anytime the grantor, a nonadverse party, or both have the power to loan income or corpus to the grantor without adequate security or without adequate interest, unless a nongrantor trustee may make such loans to any and all persons. Thus, the mere power to loan trust property to the grantor on favorable terms, vested in the grantor or a nonadverse party, evidences enough grantor dominion and control over the trust to justify taxing all the trust income to the grantor.[15] However, if a nongrantor trustee can make unsecured or no-interest loans to anyone, the grantor is seemingly on equal footing with the rest of the world, and the evidence of grantor dominion and control is less.

Section 675(2) can be avoided easily. A trust grantor can install a "friendly" trustee[16] and give that trustee a general power to make unsecured or no-interest loans to anyone. In all probability, the "friendly" trustee would not make such loans to anyone except the grantor; but, nevertheless, section 675(2) would not apply. However, a grantor cannot rely on such an escape from section 675(2) if he contemplates actually borrowing from the trust. When actual borrowing occurs, section 675(3) must be considered.

As previously noted, section 675(3) treats a trust grantor as owning any "portion of a trust in respect of which" he borrows, if the loans are either unsecured or bear no interest or are made by a "friendly" trustee, unless the grantor repays the loans before the beginning of the taxable year. It might seem that section 675(3) serves to tax the grantor only on the part of the trust he actually borrows. But, such an interpretation would read 675(3) as treating the grantor as owning the "portion" he borrowed rather than owning the "portion of [the] trust in respect of which" he borrowed, which is what the statute mandates.[17] Moreover, such a reading would produce an unac-

---

[15]Of course, if the tainted lending power extends only to a "portion" of the trust, that is, if the grantor could only lend himself corpus, then only that "portion" should be attributed to the grantor. Cf. sec. 1.671–3(b)(2), Income Tax Regs.

[16]By referring to a friendly trustee, we mean one who is a related or subordinate party subservient to the grantor. See secs. 675(3) and 672(c).

[17]In *Holdeen v. Commissioner*, T.C. Memo. 1975–29, the grantor-taxpayer established a complicated series of long-term trusts benefiting his family and various charities. His daughter served as trustee of one of the trusts and expended $80,000 from that trust for mortgage participation certificates on property the grantor-taxpayer owned which was subject to

ceptable result. The power to make unsecured or no-interest loans to a trust grantor causes the grantor to be treated as owner of the entire trust under section 675(2). It would be incongruous if unsecured or no-interest loans actually made to the grantor caused only the part of the trust actually borrowed to be treated as the grantor's under section 675(3). That result would make avoidance of section 675(2) not only easy, but relatively harmless from the grantor's viewpoint—he could still obtain trust property in the form of favorable loans but without having to worry about being treated as owning any substantial part of the trust. Therefore, we refuse to read "portion of [the] trust in respect of which" to mean merely "portion."

Likewise, we reject petitioners' contention that "portion" refers to the amount borrowed in comparison to the entire trust. Petitioner would have us calculate a fraction arrived at by dividing the amount borrowed by the trust corpus, and treat that fraction as the trust "portion" owned by the grantor. If such were the case, a trust grantor could borrow the entire trust income derived from the entire trust corpus but only be treated as owning a fraction of the trust, even though his borrowing evidences dominion and control over the entire trust. We find such a result patently unreasonable and unsupported by the statutory language or any other authority.[18]

On the other hand, we need not address respondent's contention that "portion" means the entire trust whenever a grantor has the power to borrow all corpus or income and any trust property is borrowed. See *Mau v. United States*, 355 F. Supp. 909 (D. Hawaii 1973). In this case, petitioner-husband borrowed all the trust income and that income was derived from the entire

---

preexisting mortgages. We held that the grantor-taxpayer indirectly borrowed $80,000 from the trust which he repaid when he transferred the mortgaged property to the trust. We held further that the grantor-taxpayer was to be treated under sec. 675(3) as owner of an $80,000 "portion" of the trust during the years between the loan and the repayment.

It might seem that *Holdeen* stands for the proposition that "portion" means the amount actually borrowed. However, such does not follow from a careful reading of that case. The $80,000 borrowed in *Holdeen* was corpus and we, in effect held that $80,000 of the corpus was the "portion of [the] trust in respect of which" the grantor-taxpayer borrowed. Furthermore, it is unclear whether any more could have been borrowed. See note 19 *infra*. In summary, *Holdeen* involved a cash loan from corpus and is thus distinguishable from most cases which involve a noncash corpus, cash loans, direct borrowing, and clearly defined borrowing perimeters. We do not find *Holdeen* necessarily inconsistent with our holding in this case.

[18]Petitioners mistakenly rely on *Holdeen v. Commissioner*, T.C. Memo. 1975–29, as supporting their interpretation of sec. 675(3). See note 17 *supra*.

trust corpus. Thus, it is clear that petitioner-husband should be treated as owner of the entire trust. It does not matter in this case whether we reach that result via respondent's automatic entire trust rule or via calling petitioner-husband owner of the entire trust simply because he actually borrowed "in respect of" the entire trust. The same result is reached either way. It is best to wait for a case clearly presenting the problem to analyze fully respondent's "entire trust" contention.[19]

Petitioners in this case have made no showing that less than all the trust should be treated as being owned by petitioner-husband.[20] As previously noted, he borrowed all the trust income which was in respect of all the trust corpus. His borrowings undoubtedly indicate significant dominion and control over the entire trust. Accordingly, we conclude that petitioner-husband is treated as owning the entire trust during 1974 and 1975.

To reflect the foregoing,

*Decision will be entered for the respondent.*

---

[19]Such a case would arise if, for example, a trust grantor transferred two separate income-producing stocks to a trust, but only borrowed the income derived from one of those stocks. Respondent would argue that the grantor's borrowing represents not only the grantor's control of the property he has in hand but is indicative of his ability to control all the trust property on similar terms. Just as the mere existence of a power to revoke evidences substantial dominion and control, see sec. 676, so does the mere existence of unsecured or no-interest borrowing or borrowing from a "friendly" trustee. It appears from respondent's brief in this case that, if the grantor-taxpayer could demonstrate that his borrowing does not evidence his ability to borrow the entire trust on sec. 675(3) terms, respondent would not argue that the entire trust should be treated as being owned by that grantor-taxpayer. For example, if the trust terms forbid grantor borrowing of current income, and a grantor only borrowed corpus, then he should be treated as owning only corpus, since his borrowing from corpus evidences no dominion and control over income. In other words, respondent's position would be that the grantor-taxpayer must show that all the trust could not be borrowed on the same terms that part was borrowed.

[20]Petitioners contend that the burden of proof rests with respondent because respondent took alternative, inconsistent positions in his notice of deficiency. That contention is meritless. See *Meyer v. Commissioner*, 46 T.C. 65, 82 (1966), affd. in part, vacated and remanded in part 383 F.2d 883 (8th Cir. 1967). Thus, the burden of proof rests with petitioners. Rule 142(a), Tax Court Rules of Practice and Procedure; *Welch v. Helvering*, 290 U.S. 111 (1933).