EUGENE H. AND THERESA H. WHITEHEAD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Whitehead v. Commissioner
Docket No. 33317-87
United States Tax Court
T.C. Memo 1991-455; 1991 Tax Ct. Memo LEXIS 504; 62 T.C.M. (CCH) 758; T.C.M. (RIA) 91455; September 19, 1991, Filed *504 Decision will be entered under Rule 155. Joseph F. Moore, for the petitioners. Philip J. Starr and Margaret R. Reichenberg, for the respondent. PARR, Judge. PARR
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in and additions to petitioners' Federal income tax as follows: Additions to Tax
Year
Deficiency
Sec. 6653(a) [1]
1979
$ 6,256
$ 313
1980
31,902
1,595
After mutual concessions, the questions presented are: (1) Is the E. H. Whitehead Associates Trust a sham? (2) If not, should it be taxed as a grantor trust, or as an association taxable as a corporation under section 7701? (3) Are petitioners liable for self-employment tax under section 1401 for 1980? (4) Are petitioners liable for an addition to tax under section 6653(a) for negligence in *505 1980? FINDINGS OF FACT Petitioners, husband and wife, resided in San Gabriel, California, when they filed their petition. On November 30, 1978, with the help of the Tax Information Center (TIC), petitioners created two living trusts: Mr. Whitehead (petitioner) created the "S P & M Trust" and Mrs. Whitehead created the "Tidal Trust." Petitioner first heard of TIC when he attended a show featuring products and services for businessmen at the Los Angeles Convention Center in the summer of 1978. TIC offered tax preparation and consultation services. TIC also sold tax shelters, designed to defer income by showing losses in the early years. Toward the end of 1980 petitioner paid $ 10,000 cash for one such plan called R-Tera, sold to him by a former vice president of TIC who had since left. Petitioner also signed a note in connection with R-Tera for $ 30,000, and claimed a deduction for $ 40,000 on the return for the S P & M Trust. Petitioner never paid anything on the note. In 1980 TIC prepared petitioners' tax returns with information provided by petitioner. Mr. Whitehead consulted a CPA who used the numbers in petitioner's books and records for the Trust and prepared a Schedule *506 C for submission to TIC. TIC prepared the returns and mailed them to petitioner. The tax returns for the living trusts were prepared with a box checked "Grantor Trust." A group of attorneys known as the Group Legal Plan provided service to clients of TIC. The lawyers were located in Arizona. TIC's main offices were in New Concord, Ohio. The returns were prepared in Butler, Pennsylvania. TIC offered to assist clients if they were audited by the Internal Revenue Service, and petitioner used the service when the returns in issue were audited. On advice of an attorney who prepared petitioners' 1981 returns petitioners abandoned the grantor trusts. Petitioners now concede they are not entitled to the tax benefits claimed for tax year 1980 with regard to these trusts. The question before us involves a third trust, which respondent contends is a sham or alternatively a grantor trust; petitioners contend it is an association taxable as a corporation. At stake is the validity of deductions claimed for pension plan contributions and self-insured medical and legal plans. Since 1955 petitioner has worked as a consultant to large aerospace contractors, including TRW, Aerojet General, *507 and Ryan Teledyne. He was aware that employees of these companies enjoyed benefits such as medical care and pension plans, which he did not have. In January 1979 petitioner consulted one of the attorneys in Arizona[2] about ways to obtain these benefits. He was told he could achieve his goals through a business trust or a corporation. Petitioner thought that if he chose a trust he could avoid the annual State tax on corporations. On January 26, 1979, Mr. Whitehead signed a trust instrument entitled "E. H. Whitehead Associates Trust" (Trust). The Trust was organized under California law. On the same day petitioner executed "Exhibit A" of the Trust, which purports to assign to the trustee "all of [petitioner's] rights, title and interest in and to, all business activity income and profits therefrom and as described in the Third section, paragraph B of the [Trust]." That section vests the trustee with authority to: engage in any and all activities, businesses, *508 and ventures, whether or not for profit as may be lawful under the applicable laws of the state of CALIFORNIA. Said activities, businesses, and ventures include, but are not limited to, services rendered within the scope of the profession of consulting engineer, and the performance of all acts in furtherance thereof, and the management, development, and sale of real estate.
Petitioner transferred no assets to the Trust and the Trust earned no income from any transferred assets. Petitioner was the sole grantor, the sole trustee, and the sole "employee" of the Trust. As a practical matter, petitioner was also the sole beneficiary. The trust instrument created 100 "shares" of beneficial interest. The trustee was given authority to transfer or retain the shares for any consideration he deemed fitting or for no consideration at all. The trustee's retention of the shares was intended to have no effect on his status or power as a "trustee." The shares purportedly entitled their holders, "the Beneficiaries of the Trust," to "participate in all dividends and other distributions of income or principal" at the trustee's sole discretion. The trust instrument contains no restrictions *509 on the beneficiaries' rights to transfer shares. Petitioner never, in fact, transferred any shares. The trustee was authorized to pay "dividends" out of the net earnings of the Trust. Timing and amount was left to the trustee's sole discretion. No dividends were ever paid. The trust instrument gave the holders of beneficial interests no rights to trust property. Pursuant to the trust instrument, neither "the death, insolvency, nor incompetency of a Beneficiary, nor the transfer of share certificates" would terminate or dissolve the Trust. The trust instrument gave the trustee absolute discretion to terminate the Trust at any time. The trust instrument purports to limit the beneficiaries' and trustee's liability to third parties to the amount of the Trust's assets. The trustee is indemnified against loss. The trust agreement states: Any act or thing done by the Trustee, or by the officers or agents of the trust under authority from the Trustee, shall as to strangers dealing with such Trustee, officers or agents, be conclusively deemed to be within the purpose of this trust and within the powers of the Trustee or any of them * * *.
Petitioner leased his car to the Trust *510 for $ 1,200 per year. The Trust then deducted expenses for the repair and maintenance of the car. Nonetheless, petitioner continued to use the car for his personal use without compensating the Trust. The Trust adopted a fiscal yearend of January 31. On February 6, 1979, "Eugene Whitehead, consulting engineer, doing business as E. H. Whitehead Associates," entered into a consulting agreement with Maron Engineering Company (Maron) to perform services as an independent contractor. Petitioner was the only "associate." His brothers Bruce and Donald are also engineers; Bruce lives in San Gabriel, California, where petitioner resides, while Donald lives in Georgia. None of the brothers are in business together. Maron paid $ 48,931 for petitioner's services during the fiscal year ending January 31, 1980. Petitioner worked as a consulting engineer for Maron during 1979 and 1980. The Trust paid petitioner "wages" of $ 19,914 during fiscal year ending January 31, 1980. There was no written employment contract between the Trust and petitioner specifying his duties or salary nor was there a resolution authorizing his hiring by the Trust. In fact, there were no written documents at all *511 with respect to petitioner's employment by the Trust. The Trust agreement simply provides that "the Trustee shall receive such compensation, regular or special, as he shall deem reasonable and proper. He shall fix the compensation, if any, of all officers and agents appointed by him." The Trust incurred, paid, and deducted some ordinary and necessary expenses in connection with petitioner's services to Maron, which respondent concedes are deductible by petitioner. The Trust also deducted contributions to a qualified defined benefit pension plan, a self-insured medical plan, a self-insured legal plan, and the wages paid to petitioner. After deductions for expenses and various pension and retirement payments, the Trust reported a loss. Since 1979, when the Trust was formed, petitioner has had several occasions to sign contracts upon obtaining work in the aerospace industry. The contracts have consistently been entered into in the name of the Trust, signed by petitioner as trustee. He has maintained a bank account in the name of the Trust, and has used the Trust Federal identification number for the bank account. Petitioner has regularly filed Federal employment tax returns *512 on behalf of the Trust, reporting Social Security withholdings and California withholdings, and has caused the Trust to pay those withholdings over to the appropriate agencies. In each year since its inception petitioner has caused the Trust to pay him a salary and to contribute to a pension plan on his behalf. After mutual concessions, the only deductions at issue are $ 1,294 for the employee benefit plan and $ 16,788 for the pension and profit sharing plan. OPINION Petitioners contend that the Trust is a valid business trust that should be treated as a corporation for Federal income tax purposes. They concede that if the Trust is not taxable as a corporation, then the employee benefit plan and the pension plan are not deductible. Respondent contends the Trust is a sham, and that payments received from Maron should be taxed as self-employment income to petitioner. If we find the Trust is characterized as an association taxable as a corporation, respondent concedes that the deductions claimed by the Trust for the pension and benefit plans are valid. We agree with respondent that the trust is a sham. This is a classic attempt to shift taxation on earned income to another entity. *513 The first principle of taxation is that income is taxed to the one who earns it. Commissioner v. Culbertson, 337 U.S. 733, 739-740, 93 L. Ed. 1659, 69 S. Ct. 1210 (1949); Lucas v. Earl, 281 U.S. 111, 74 L. Ed. 731, 50 S. Ct. 241 (1930). Contractual arrangements designed to avoid this maxim, by attempting to deflect income away from the one who earns it, will not be recognized as determinative for Federal tax purposes. Wesenberg v. Commissioner, 69 T.C. 1005, 1010 (1978). When the form of a transaction does not alter economic relationships, the courts will disregard the form and apply the tax law according to the substance of the transaction. Markosian v. Commissioner, 73 T.C. 1235, 1241 (1980). The choice of the proper taxpayer turns on which person or entity in fact controls the earning of the income rather than who ultimately receives it. Vercio v. Commissioner, 73 T.C. 1246, 1253 (1980). Petitioner would have us treat the trust as a personal services corporation (PSC) which contracted with third parties for petitioner's services and paid petitioner a salary. Under some circumstances a PSC, rather than the sole service-performer, has *514 been held to be the taxable entity. See, e.g., Sargent v. Commissioner, 929 F.2d 1252 (8th Cir. 1991); Haag v. Commissioner, 88 T.C. 604 (1987), affd. without published opinion 855 F.2d 855 (8th Cir. 1988); Johnson v. Commissioner, 78 T.C. 882 (1982), affd. without published opinion 734 F.2d 20 (9th Cir. 1984); Pacella v. Commissioner, 78 T.C. 604, 618-619 (1982); Keller v. Commissioner, 77 T.C. 1014 (1981), affd. 723 F.2d 58 (10th Cir. 1983). Such cases, unlike this, involved duly formed corporations under State law. Moreover, two requirements must be met before the PSC will be considered the controller of the income and taxable thereon. Those requirements are: (1) The service-performer employee must be an employee of the corporation whom the corporation has the right to direct or control in some meaningful way; and (2) there must exist between the corporation and the person or entity using the services a contract or similar indicium recognizing the corporation's controlling position. Johnson v. Commissioner, supra at 891. *515 We have recognized that the first requirement must be interpreted in light of the tension between the nature of the corporate business form, see Moline Properties v. Commissioner, 319 U.S. 436, 87 L. Ed. 1499, 63 S. Ct. 1132 (1943), and assignment of income notions, see Lucas v. Earl, supra.
Petitioner, however, is not helped by such cases. Here, not only did petitioner fail to use the corporate form; there is no agreement between petitioner and the Trust. Petitioner has not met the first prong of the Johnson test. The PSC cases are inapposite. Here, petitioner did not use the corporate form and the Trust provisions herein are similar to those in the so-called family trusts which we have repeatedly held to be invalid for Federal income tax purposes. In many of those cases, as in this one, taxpayers purported to convey their future services to a trust. See, e.g., Vercio v. Commissioner, supra at 1249; Markosian v. Commissioner, supra at 1237; Wesenberg v. Commissioner, supra at 1007. The presence here of an agreement between the trust and Maron does not alter the result. See Vercio v. Commissioner, supra at 1254. *516 As in those cases, petitioner's economic position did not change. His relationship to his income was exactly the same after he created the Trust as it was beforehand. Petitioner had unfettered control over the assets and operations of the trust. He was the sole grantor, trustee, beneficiary, and sole employee. He had no obligation to pay dividends. He could terminate the Trust at will. The Trust was a sham. Since the Trust is a sham, it follows that petitioner was operating his business as a sole proprietorship. The only evidence in the record of the terms of his employment during the taxable years at issue relates to his tenure as a consulting engineer for Maron. Under the terms of the "Consulting Agreement" by which petitioner was hired, he was to perform his duties as an independent contractor. His income is thus subject to self-employment tax under section 1401, as determined by respondent. Respondent also contends petitioners are liable for an addition to tax under section 6653(a) for taxable year 1980. This addition applies where any part of an underpayment of tax required to be shown on a return is due to negligence or intentional disregard of rules and regulations. *517 The burden of proof is on petitioners. Rule 142(a). Petitioners claimed large deductions or losses related to three trusts which they have either conceded or we have found were invalid for Federal tax purposes. They should have known from the beginning that this was too good to be true. We sustain the addition to tax for negligence. To reflect our conclusions herein and the concessions of the parties, Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code as in effect for the years at issue, and all Rule references are to the Tax Court's Rules of Practice and Procedure.↩
2. Petitioner then resided in Los Angeles, California.↩