RUSSELL H. WHITE and BELVA J. WHITE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
White v. Commissioner
Docket No. 2419-78.
United States Tax Court
T.C. Memo 1981-73; 1981 Tax Ct. Memo LEXIS 667; 41 T.C.M. (CCH) 931; T.C.M. (RIA) 81073; February 23, 1981. Joseph Weigel, for the petitioners. Wayne B. Henry, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Marvin F. Peterson, pursuant to the provisions of Rule 180, Tax Court Rules of Practice and Procedure.[1] The Court agrees with and adopts his opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE PETERSON, Special Trial Judge: Respondent determined deficiencies is petitioners' Federal income taxes as follows: TaxableYear
Deficiency
1972
$ 293.32
1973
7,930.14
1974
6,219.87
After a concession, the issue for decision is whether certain compensation, *669 interest, and dividends earned during each of the years are taxable to a family trust or to petitioners. FINDINGS OF FACT Some of the facts have been stipulated by the parties and are found accordingly. Petitioners resided in the State of Wisconsin when they filed their petition herein. Petitioners filed timely joint income tax returns for each of the years 1972 through 1974, with the Internal Revenue Service Center, Kansas City, Missouri. During each of the years involved, Russell H. White (hereinafter Russell) was employed by Litho Production, Inc. (hereinafter Litho) in Madison, Wisconsin. Russell performed duties as the Treasurer and served on the Board of Directors of Litho. Petitioner's employment was directly under the supervision and control of Litho. On November 22, 1972, Russell executed a document entitled "Declaration of Trust of This Constitutional Trust." The document was executed by petitioner for the purpose of creating a trust known as The Russell H. White Family Estate (A Trust) (hereinafter Trust). Thedeclared purpose of the Trust was: "* * * to accept rights, title and interest in real and personal properties conveyed by THE GRANTOR CREATOR HEREOF. *670 Included therein is the exclusive use of his or her lifetime services and ALL OF his or her EARNED REMUNERATION ACCRUING THEREFROM, from any current source whatsoever, * * *." The Trust document was signed by Russell's wife, Belva White and his brother-in-law, Donald R. Hyde as the trustees. The Trust was to continue fora period of 25 years unless the trustees unanimously determined to terminate the Trust at an earlier date at which time the assets of the Trust would be distributed to the beneficiaries. On the same date the Trust was created, petitioner was appointed a trustee, and on December 1, 1972, Donald R. Hyde resigned as a trustee. Thereafter, throughout the years herein the petitioners were the only trustees of the Trust. On November 24, 1972, Russell was appointed the Executive Manager of the Trust and Belva was appointed Secretary of the Trust for the life of the Trust. The Trust's manager, secretary and all other officers were to be paid as independent consultants and in such amount as determined by the majority of the trustees. On November 29, 1972, Russell executed certain documents which conveyed certain real property and personal property to the Trust. On *671 December 1, 1972, Russell transferred 168 shares of stock of Litho Productions, Inc. to the Trust. Also, on November 29, 1972, petitioner signed a document which conveyed to the Trust "* * * exclusive use of my lifetime services and all of the currently earned remuneration accruing therefrom." Petitioner's employment agreement between themselves and the Trust in which the Trustretained their services as the executive manager and secretary, respectively, did not provide for a specific salary. On December 1, 1972, an agreement was executed between the Trust and Litho in which the Trust agreed to provide Russell's services to Litho and Litho agreed to accept Russell's services for a specified rate of pay. It was understood between the parties that Russell would guarantee the Trust's obligation to hold Litho harmless against any claim that "IRS or any other Federal, state or local government office might make against said Company." As a result of this agreement Litho did not withhold Federal or state income taxes. Also, Litho made payments for Russell's services directly to the Trust. Commencing in 1975, Litho paid Russell directly for his services and ignored the agreement with *672 the Trust for his services. The creation of the Trust did not materially change Russell's employment relationship or duties with Litho. Documents entitled "Units of Beneficial Interest" were issued. These documents provided, in part, that each certificate of beneficial interest "conveys no interest of any kind in the Trust assets, management or control thereof." On November 22, 1972, the Trust initially issued 100 units to Russell. Shortly thereafter, Russell made various transfers which resulted in the following persons holding the beneficial units in the Trust: Belva J. White (wife)
20
Wesley J. White (son)
14
Kathleen Ann Hinzman (daughter)
14
Lawrence J. White (son)
14
Margaret R. Murray (daughter)
14
Timothy R. White (son)
14
The Russell H. White Educational Trust
Fund
10
During each of the years involved Russell failed to report as income compensation earned for services he performed for Litho as follows: Year
Amount
1972
$ 974.00
1973
26,911.00
1974
20,718.00
Russell also received interest income for the years 1973 and 1974, in the amounts of $ 77.00 and $ 114.00, respectively and dividend income for the years 1973 *673 and 1974, in the amounts of $ 504.00 and $ 252.00, respectively. Russell did not report his compensation, interest or dividend income during the years involved because of his assignments to the Trust. In addition, petitioners reported consulting fees from the Trust. Petitioners made all of the decisions concerning the Trust including the amount of the consulting fees. Further, they caused the Trust to pay many of their personal expenses during each of the years involved. The Trust filed Fiduciary Income Tax Returns (Form 1041) for the years 1973 and 1974 with the Internal Revenue Service Center at Kansas City, Mirrouri. In his notice of deficiency to petitioners, respondent determined that the compensation, interest, and dividends received by the Trust during each of the years were earned by and taxable to petitioners. OPINION The basic issue in this case is whether the purported conveyance by Russell of his property and lifetime services to the Trust was effective to shift the incidence of taxation on the compensation received each year from petitioners to the Trust. Russell contends that a valid trust was created and the assignment of his lifetime services and all the *674 income accruing therefrom was sufficient to shift the incidence of taxation from himself to the Trust. [2] Petitioners argue that the question involved herein is the right to contract under the United States Constitution and not whether there was as assignment of income from Russell to the Trust. As a result of the agreement for Russell's services between the Trust and Litho, petitioners argue that Russell performed service as an agent for the Trust.Petitioners argue the agreement was not a sham as evidenced by the fact that Litho made payment directly to the Trust for the services rendered during theyears herein. Respondent disagrees with petitioner's position and maintains that the Trust lacks economic reality, that the compensation received by the Trust for Russell's services was an anticipatory assignment of income ineffective to treat the compensation as that of the Trust, and that the compensation and other income earned by the Trust are taxable to petitioners under the grantor trust provisions set forth in sections 671 through 677. We agree with respondent that the compensation and other income received are taxable to petitioners. *675 It is true that petitioners have a constitutional right to enter into contractual arrangements. But it is also true that a taxpayer may not enter into such arrangements that are designed simply to alter the Federal income tax consequences of income between various entities without regard to the true earner of such income. Lucas v. Earl,281 U.S. 111 (1930). As stated by the Supreme Court the "first principle of income taxation" is that income must be taxed to the one earns it. Commissioner v. Culbertson,337 U.S. 733, 739-740(1949). Further, it is the person or entity that controls the earning of the income, and not the one who ultimately receives it, that must pay the income tax thereon. AmericanSavings Bank v. Commissioner,56 T.C. 828, 838-839 (1971); Wesenberg v. Commissioner,69 T.C. 1005 (1978). As we said in American Savings Bank v. Commissioner,supra at 839, the factual background must be carefully scrutinized to determine the person that earns the income. In the instant case Russell executed documents which assigned his services and all of his earned income to the Trust. However the record *676 is clear that Russell in his individual capacity continued his employment relationship with his employer. Although the Trust had an employment agreement with Litho to perform services, the agreement required that only Russell's services could be used to fulfill the requirements of the agreement. Other pertinent factors are that Litho looked to Russell to hold it harmless for any federal or state taxes and that in 1975 Litho unilaterally commenced paying Russell'swages directly. We think these factors strongly underline the crucial fact that Russell had complete control of the employment and the income earned. It is obvious that Litho entered into the employment agreement solely as an accommodation to Russell and, at all times, considered Russell to be its employee. From the facts in this case it is evident that Russell's conveyance to the Trust and the employment agreement is simply a sophisticated attempt to shift the incidence of taxation on his earned income to the Trust. In applying the Supreme Court's rule that income is taxed to the one who earns it, the crucial point to consider is not the timing of the assignment, but the earning of the income. Therefore, the fact that *677 the employment agreement predates the earning of the income is of no help to petitioners' cause in this case since Russell continued to earn the income. Accordingly, we hold that all amounts of income reported by the Trustduring the years from Litho were earned by Russell. The Trust involved herein is no more effective to shift the incidence of taxation from petitioner to the Trust than a number of other factually similar cases where we also held such arrangements were not effective to shift the incidence of taxation from the taxpayer to a trust. See Vercio v. Commissioner,73 T.C. 1246, 1254 (1980); Markosian v. Commissioner,73 T.C. 1235 (1980); Wesenberg v. Commissioner,69 T.C. 1005, 1011 (1978); Vnuk v. Commissioner,621 F.2d 1318 (8th Cir. 1980), affg. T.C. Memo. 1979-164; Horvat v. Commissioner,T.C. Memo. 1977-104, affd. by unpublished order (7th Cir. June 7, 1978), cert. denied 440 U.S. 959 (1979); Taylor v. Commissioner,T.C. Memo. 1980-313; and Gran v. Commissioner,T.C. Memo. 1980-558. In addition, Russell unconditionally assigned *678 his services and income to the Trust under an arrangement which allowed the majority of the trustees to determine the amount of the consulting fee to be received from the Trust for his services. Not only is such an indefinite and loose agreement unenforceable, but it is unrealistic and without economic substance to conclude that a taxpayer would agree to turn over all of his earned income for an unspecified payment under such circumstances unless he was in control of the trust or other entity. Where a trust has no valid purpose other than tax avoidance it loses its economic reality, which, in turn, mandates that we disregard any attempt to shift income to a mere paper entity. See Markosian v. Commissioner, supra at 1245. Even if the Trust had any economic substance, the record is clear that the grantor trust provisions of sections 671 through 677 require that all of the income reported by the Trust be taxed to petitioners. See Wesenberg v. Commissioner,supra at 1012-1014. To reflect the conclusions reached herein
Decision will be entered under Rule 155. Footnotes
1. The Court granted a joint motion filed by the parties to waive the post-trial procedures set forth in Rule 182.↩
2. It should be noted that Belva assigned her lifetime services to Russell, who, in turn, assigned these services to the Trust. However, for reasons unexplained Belva's wages were not treated as income of the Trust.↩