ESTATE OF LEON R. LILJEQUIST (DECEASED), MURIEL LILJEQUIST, EXECUTRIX, and MURIEL S. LILJEQUIST, SURVIVING SPOUSE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Liljequist v. Commissioner
Docket No. 2962-78.
United States Tax Court
T.C. Memo 1981-121; 1981 Tax Ct. Memo LEXIS 620; 41 T.C.M. (CCH) 1103; T.C.M. (RIA) 81121; March 17, 1981. Joseph Weigel, for the petitioners. Wayne B. Henry, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Marvin F. Peterson, pursuant to the provisions of Rule 180, Tax Court Rules of Practice and Procedure.[1] The Court agrees with and adopts his opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE PETERSON, Special Trial Judge: Respondent determined deficiencies in petitioners' 1973 and 1974 Federal income tax in the amounts of $ 7,753.74 and $ 33.543.44, respectively. After a concession, the issue for decision is whether certain compensation, interest, dividends, and *622 capital gain income earned during the years involved were taxable to a family trust or to Leon R. Liljequist (Deceased) and Muriel S. Liljequist. FINDINGS OF FACT Some of the facts have been stipulated by the parties and are found accordingly. The Estate of Leon R. Liljequist (Deceased) had its situs in the State of Illinois and Muriel S. Liljequist resided in the State of Illinois when the petition was filed herein. Leon R. Liljequist (hereinafter Leon) and Muriel S. Liljequist (hereinafter Muriel) filed timely joint income tax returns for the years 1973 and 1974 with the Internal Revenue Service Center, Kansas City, Missouri. During 1974 and for some period of time prior thereto, Leon was the national sales manager for Commercial Trades Institute, Chicago, Illinois. On April 1, 1974, Leon terminated his services as an employee with Commercial Trades Institute (hereinafter Commercial) and commenced working three days a week as an independent consultant. Leon changed his employment relationship with his employer primarily as a transition step to his retirement. On September 23, 1973, Leon executed a document entitled "Declaration of Trust of This Pure Trust." The document *623 was executed by petitioner for the purpose of creating a trust known as The Leon R. Liljequist Family Estate (A Trust) (hereinafter Trust). The declared purpose of the Trust was: "* * * to accept rights, title and interest in and to real and personal properties, whether tangible or intangible, conveyed by THE CREATOR HEREOF AND GRANTOR HERETO to be the corpus of THIS TRUST. Included therein is the exclusive use of h    lifetime services and ALL of h    EARNED REMUNERATION ACCRUING THEREFROM from any current source whatsoever, * * *." The Trust document was signed by Muriel and Jon L. Liljequist, Leon's son, as the Trustees. The Trust was to continue for a period of 25 years unless the trustees unanimously determined to terminate the Trust at an earlier date at which time the assets of the Trust would be distributed to the beneficiaries. Immediately after the creation of the Trust, Leon was appointed a trustee. On September 28, 1973, Leon executed a document which provides: "* * * I hereby convey to this trust certain of my real and personal properties and the right title and interest therein, to form the corpus of this trust, included therein is the exclusive use of *624 my lifetime services and all of the currently earned remuneration accruing therefrom." At the inception of the Trust the trustees appointed Leon and Muriel executive manager and executive secretary, respectively, of the Trust for the life of the Trust. The minutes of the Trust provide that Leon and Muriel were to receive a monthly consulting fee from the Trust for their services commencing October 1, 1973, in the amounts of $ 300 and $ 100, respectively. No change was made in the fee until January 1, 1975. Documents entitled "Units of Benefical Interest" were issued. These documents provided, in part, that each certificate of beneficial interest "conveys no interest of any kind in the Trust assets, management or control thereof." On September 28, 1973, the Trust initially issued 100 units to Leon. On this same date Leon transferred 50 units to Muriel. On December 31, 1973, Leon and Muriel made various transfers after which the following persons held the beneficial units in the Trust: Beneficial Units
Leon R. Liljequist
4.5
Muriel S. Liljequist
49.5
Jon L. Liljequist (son)
15
Barbara L. Chaplin (daughter)
15
Rogner S. Liljequist (son)
15
Liljequist Educational Assistance Fund
1
*625 During the years at issue, the Trust did not have an employment contract with Commercial. During the period of time that Leon was an employee of Commercial his salary was paid to him. However Commercial did make payment to the Trust pursuant to Leon's request commencing April 1, 1974, when Leon began his services as a part-time consultant. Leon's employment relationship with Commercial was not materially changed in spite of Leon's assignment of his lifetime services to the Trust. He continued to personally control his employment relationship at all times during 1973 and 1974. During 1973 and 1974, Leon failed to report as income compensation earned for services performed for Commercial in the amounts of $ 13,000 and $ 67,223.99, respectively. In addition, Leon and Muriel failed to report during 1973 a short-term gain from the sale of 100 shares of General American stock in the amount of $ 1,098.50, and during 1974 a long-term capital gain in the amount of $ 6,639 and interest and dividend income in the amount of $ 4,374.22. During the years involved Leon and Muriel did not report as income all of Leon's earned compensation, the capital gains realized, or the dividends and *626 interest received because of Leon's assignments to the Trust. However, during 1974, Leon and Muriel did report consulting fees from the Trust in the amount of $ 4,800. Leon and Muriel made all of the decisions concerning the Trust including the amount of the consulting fees. Further, they caused the Trust to pay many of their personal expenses during each of the years involved. The Trust filed Fiduciary Income Tax Returns (Form 1041) for the years 1973 and 1974 with the Internal Revenue Service Center at Kansas City, Missouri. In his notice of deficiency to petitioners, respondent determined that all compensation received by Leon during each of the years herein was earned by Leon and taxable to petitioners and that the capital gains realized on the sale of stock and real estate and that all interest and dividend income reported as Trust income were properly taxable to petitioners. OPINION The basic issue in this case is whether the purported conveyance by Leon of his property and lifetime services to the Trust was effective to shift the incidence of taxation of the compensation and other income received each year from petitioners to the Trust. Petitioners contend that *627 a valid trust was created and the assignment of Leon's lifetime services, including all the income accruing therefrom, personal and real property, was sufficient to shift the incidence of taxation from Leon to the Trust. Petitioners argue that the question involved herein is the right to contract under the United States Constitution and not whether there was an assignment of income from Leon to the Trust. As a result of the assignment of Leon's services petitioners argue that he performed service as an agent for the Trust in that his services were subcontracted to Commercial. Petitioners argue the assignment was complete as evidenced by the fact that the consulting fees paid for Leon's services were made directly to the Trust. Respondent disagrees with petitioners' position and maintains that the Trust lacks economic reality, that the compensation received by the Trust was an anticipatory assignment of income ineffective to treat the compensation as that of the Trust, and that any income earned by the Trust is taxable to petitioner under the grantor trust provisions set forth in sections 671 through 677. We agree with respondent that the compensation and other income received are *628 taxable to petitioners. A well established principle of Federal income tax law is that income is taxed to the one who earns it. Commissioner v. Culbertson,337 U.S. 733, 739-740 (1949). Although Leon executed a document assigning his income to the Trust such assignments are not recognized for Federal income tax purposes where the arrangement has no substance other than to alter the income tax consequences between persons or entities without regard to the true earner of the income. Lucas v. Earl,281 U.S. 111 (1930). The person or entity that controls the earning of the income, and not the one who ultimately receives it, must pay the income tax thereon. American Savings Bank v. Commissioner,56 T.C. 828, 839 (1971). In the instant case Leon executed a document which assigned his services to the Trust. In spite of the assignment Leon continued to receive his salary from Commercial until April 1, 1974, when he became an independent consultant. At this time Commercial commenced paying the consulting fee to the Trust based on Leon's request and not by reason of Leon's assignment of his lifetime services to the Trust. Commercial's *629 employment contract was with Leon and not the Trust. Accordingly, it was Leon who had control of the earning of the income during the years involved. The agreement by Commercial to pay the consulting fee to the Trust was done simply as an accommodation to Leon. It is obvious that Commercial did not recognize Leon's assignment of his services to the Trust since Commercial continued to pay Leon's salary directly to him after the assignment was made and until he terminated his services as an employee on March 31, 1974. Accordingly, we hold that all amounts of income received from Commercial and reported by the Trust during 1973 and 1974 were earned by Leon. The Trust involved in the instant case is no more effective to shift the incidence of taxation from petitioners to the Trust than a number of other factually similar cases where we also held such arrangements were not effective to shift the incidence of taxation from the taxpayer to a trust. See Vercio v. Commissioner,73 T.C. 1246, 1254 (1980); Markosian v. Commissioner,73 T.C. 1235 (1980); Wesenberg v. Commissioner,69 T.C. 1005, 1011 (1978); Vnuk v. Commissioner,621 F.2d 1318 (8th Cir. 1980), *630 affg. T.C. Memo. 1979-164; Horvat v. Commissioner,T.C. Memo. 1977-104, affd. by unpublished order (7th Cir. June 7, 1978), cert. denied 440 U.S. 959 (1979); Taylor v. Commissioner,T.C. Memo. 1980-313; and Gran v. Commissioner,T.C. Memo. 1980-558. In addition we find the Trust had no economic reality during 1973 and 1974 and was established solely for tax avoidance purposes. Under these circumstances we must disregard the attempt to shift income to the Trust. Markosian v. Commissioner,supra at 1245. During the years involved Leon earned approximately $ 78,000 which petitioners maintain should be taxed to the Trust by reason of Leon's assignment of his lifetime services to the Trust. In return Leon received $ 3600 from the Trust for the same services. Surely, it would be unreasonable and unrealistic for the Court to conclude that the assignment of Leon's services had any economic substance. Obviously, Leon assigned his services since he was in complete control of the Trust. As such we must find that the Trust does not exist for income tax purposes and all of the income reported *631 by the Trust is properly taxable to petitioners. We also note that the record supports the conclusion that the grantor trust provisions of sections 671 through 677 require that all of the income reported by the Trust be taxed to petitioners. See Wesenberg v. Commissioner,supra at 1012-1014. To reflect the conclusions reached herein, Decision will be entered under Rule 155. Footnotes
1. The Court granted a joint motion filed by the parties to waive the post-trial procedures set forth in Rule 182.↩