THOMAS N. CROWLEY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Crowley v. Commissioner
Docket No. 1632-80.
United States Tax Court
T.C. Memo 1982-211; 1982 Tax Ct. Memo LEXIS 534; 43 T.C.M. (CCH) 1137; T.C.M. (RIA) 82211; April 21, 1982. Thomas N. Crowley, pro se. Cruz Saavedra, for the respondent. PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Respondent determined deficiencies in petitioner's Federal income tax and additions to the tax under section 6653(a) [1] as follows: Deficiency
Additions to
Year
in Tax
the Tax
1975
$ 2,306.41
$ 115.32
1976
$ 1,878.40
$ 93.92
The issues for decision by the Court are: (1) Whether the purported conveyance by petitioner of his lifetime services to the Thomas N. Crowley Equity Trust was effective to shift to the trust the incidence of taxation on the amounts paid as compensation by *536 the City of Los Angeles; (2) Whether the Thomas N. Crowley Equity Trust and the purported assignment of petitioner's lifetime services and the transfer of certain other property thereto lacked economic substance and therefore should not be recognized for Federal tax purposes; (3) Alternatively, whether petitioner should be treated as the owner of the Thomas N. Crowley Equity Trust under sections 671-677 since the income from that trust was or could have been distributed to petitioner without the approval or consent of any adverse party; (4) Whether petitioner is entitled to a deduction of $ 1,750 claimed on his 1975 individual income tax return for conservation of assets or educational expenses; and (5) Whether petitioner has established that the underpayments of tax were not due to negligence or intentional disregard of rules and regulations under section 6653(a). FINDINGS OF FACT At the time the petition in this case was filed, petitioner resided in a mobile home located at 7337 Ethel Avenue, North Hollywood, California. He also resided in that mobile home at that address at all times during 1975 and 1976. Petitionr filed his Federal individual income tax returns for *537 1975 and 1976 with the Internal Revenue Service Center at Fresno, California. Petitioner also filed for 1975 and 1976 Forms 1041, U.S. Fiduciary Income Tax Return, for the Thomas N. Crowlet Equity Trust. The Form 1041 for 1975 was for the period July 1 through December 31, 1975. During 1975 and 1976 petitioner was employed as an inspector by the City of Los Angeles. His employer paid him wages in the amounts of $ 20,135.26 for 1975 and $ 19,910.80 for 1976. [2] The payments were made directly to him and Forms W-2, Wage and Tax Statements, were issued to him for both years. In 1975 petitioner owned the mobile home in which he lived, some rental property located on 55th Street, some shares of stock, and an automobile. He also had some money on deposit in an interest-bearing bank account. *538 On June 21, 1975, petitioner executed a document entitled "Declaration of Trust of this Pure Trust," a preprinted form that petitioner had purchased along with other materials from Educational Scientific Publishers for some $ 2,000. This perprinted form is part of a packet of information and forms sometimes referred to as "Family Trust" materials. [3] On July 23, 1975, petitioner recorded the "Declaration of Trust of this Pure Trust" with the Recorder's Office, Los Angeles County, California. In that document petitioner as creator and grantor of the "Thomas N. Crowley Equity Trust" (hereinafter "the trust") named Laura H. Taylor and Ethan Mercellus as trustees. The trust's principal place of business was listed as 7337 Ethel Avenue, North Hollywood, California, the address where petitioner lived in his mobile home. By the trust instrument, petitioner purported to assign to the trust his lifetime services, and his real and personal property. In pertinent part, the trust document read as follows: *539 The above named Trustees, for themselves and their successors IN TRUST, do hereby agree to accept properties real and personal to be conveyed and acknowledge acceptance of and delivery of all the property specified, together with all the terms of The Trust herein set forth, agreeing to conserve and improve The Trust, to invest and reinvest the funds of Said Trust in such manner as will increase the financial rating of The Trust (Estate) during the period of outstanding liabilities of the various properties and enterprises in commerce for gain, exercising their best judgment and discretion, in accordance with The Trust Minutes, making distributions of portions of the proceeds and income as in their discretion, and according to the minutes, should be made, making complete periodic reports of business trasactions, and upon final liquidation distributing the assets to the beneficiaries as their interests may appear, and in all other respects administering Said Trust (Estate) in good faith strictly in conformity hereto. POWERS OF TRUSTEES
Trustees may do anything any individual may legally do in any state or country, subject to the restrictions herein noted. They shall continue *540 in business, conserve the property, commercialize the resources, exetend any established line of business in industry or investment as herein specially noted, at their discretion for the benefit of THIS TRUST, such as, viz: buy, sell or lease land for the surface or mineral rights; buy or sell mortgages, securities, bonds, notes, leases of all kinds, contracts or credits of any form, patents, trademarks, or copyrights; buy, sell or conduct mail-order business, or branches thereof; operate stores, shops, factories, warehouses or other trading establishments or places of business of any kind; construct, buy, sell, lease or rent suitable buildings or other places of business; advertise different articles or business projects; borrow money for any business project, pledging The Trust property for the payment thereof, hypothecate assets, property, or both, of The Trust in business projects; own stock in, or entire charters of corporations, or other such properties, companies, or associations as they may deem advantageous. A Minute of Resolutions of The Board of Trustees authorizing what it is they determine to do or have done shall be evidence that such an act is within their power. *541 Anyone lending or paykng money to The Trustees shall not be obliged to see the application thereof; all funds paid into the treasury are and become a part of the CORPUS of THIS TRUST. THIS TRUST IS IRREVOCABLE Trustees' Declaration of Purpose of this Express Equity Pure Trust THE DECLARED PURPOSE OF THE TRUSTEES OF THIS TRUST shall be to accept rights, title and interest in and to real and personal properties, whether tangible or intangible, conveyed by THE CREATOR HEREOF AND GRANTOR HERETO to be the courpus of THIS TRUST. Included therein is the exclusive use of his lifetime services and ALL of his EARNED REMUNERATION ACCRUING THEREFROM, from any current source whatsoever, so that Thomas N. Crowley can maximize his lifetime efforts through the utilization of his Constitutional Rights; for the protection of his family in the pursuit of his happiness through his desire to promote the general welfare, all of which Thomas N. Crowley feels he will achieve because they are sustained by his RELIGIOUS BELIEFS. The trust document provided for the distribution of certificates of beneficial interest to be divided into 100 units. The record *542 does not indicate whether any certificates of beneficial interest were ever issued or, if issued, to whom they were issued. The trust document recited that the trust was to continue for 25 years "unless the Trustees shall unanimously determine upon an earlier date." The trustees in their discretion could terminate the trust at any earlier date. Shortly after the trust document was recorded, petitioner became a trustee of the trust. By a document dated July 25, 1975, another preprinted form purporting to be the first meeting of the board of trustees, petitioner allegedly conveyed the exclusive use of his lifetime services and all of his rights, title and interest in real and personal properties to the trust in exchange for all of the beneficial interest of the trust. By another document dated December 15, 1975, another ppreprinted form purporting to be the second meeting of the board of trustees, the trust allegedly retained petitioner's services as the executive trustee of the trust. The executive trustee was to be responsible for conducting the day-to-day affairs of the trust, and the trust was to provide the executive trustee (petitioner) with housing, transporation, health *543 care, educational allowances, other incidental expenses, and a consulting fee for his services. Both before and after creation of the Thomas N. Crowley Equity Trust, petitioner lived at the same mobile home location, worked at the same job for the same employer, owned the same real and personal properties, and managed his properties and conducted his business and personal affairs in the same way. In his capacity as executive trustee, petitioner continued to manage his rental property, collecting rents and maintaining the property, just as he had before execution of the trust document. In his capacity as executive trustee, petitioner continued paying his personal bills, just as he had before execution of the trust document. Laura Taylor was a purported beneficiary under the trust and in 1975 she was paid an amount of $ 295. That sum was immediately repaid to the trust by Laura Taylor. There is no evidence that any person other than petitioner is a beneficiary under the trust. In 1975, petitioner split his wages, dividends, interest, and rental income between his personal tax return and the fiduciary return, and in 1976 he reported all of his wages, dividends, interest, *544 and rental income on the fiduciary return. For both years he reported as his income certain alleged payments from the trust for consulting fees. In 1975 petitioner claimed as an itemized deduction on his individual income tax return an amount of $ 1,750, labeled "IRC 212-Conservation of Assets, Education Expenses." The record is not clear as to exactly what this item represents. However, the record fails to establish that petitioner in fact made such a payment whatever it is. On audit respondent disallowed the $ 1,750 deduction for 1975. Respondent also determined the trust was devoid of economic reality and an improper attempt to assign petitioner's income. Petitioner's income for each year was increased to reflect his wages, interest, dividends, and rental income, but with credits for the purported consulting fees from the trust that petitioner had already reported and for certain expenses claimed on the fiduciary returns that were properly deductible on petitioner's individual returns. [4]
OPINION This is another in the long line of so-called "Family *545 Trust" cases. Petitioner, an unmarried person without children, objects to the generic label but the well-established principles of those cases are dispositive here. Petitioner's attempt to assign his lifetime services to the Thomas N. Crowley Equity Trust was ineffective to shift the incidence of taxation from him to the trust. It is a basic principle of taxation that income is taxable to the one who earns it. Lucas v. Earl,281 U.S. 111 (1930); Commissioner v. Culbertson,337 U.S. 733, 739-740 (1949). And we of course have followed the Supreme Court's ruling in all of the multitude of family trust cases which have come before us. Vnuk v. Commissioner,621 F. 2d 1318 (8th Cir. 1980), affg. a Memorandum Opinion of this Court; Vercio v. Commissioner,73 T.C. 1246 (1980); Markosian v. Commissioner,73 T.C. 1235 (1980); Wesenberg v. Commissioner,69 T.C. 1005 (1978); Horvat v. Commissioner,T.C. Memo. 1977-104, affd. 582 F. 2d 1282 (7th Cir. 1978), cert. denied 440 U.S. 959 (1979). [5]
*546 Moreover, in this case as in the many others that are factually indistinguishable, we conclude as we have before that the trust is wholly devoid of economic substance or reality. Markosian v. Commissioner,supra.The trust purportedly created by petitioner is not entitled to be recognized as an entity separate and distinct from petitioner for Federal tax purposes. Thus, the other income from dividends, interest, and the rental property is still taxable to petitioner. Furthermore, petitioner would be treated as the owner of the trust under the "grantor trust rules" of sections 671 through 677 so that the income and expense items reported by the trust would still be attributable to him. Vercio v. Commissioner,supra;Wesenberg v. Commissioner,supra.Here, petitioner wholly controlled the trust. There was no adverse party whose approval or consent was necessary for anything. Sec. 677. Petitioner could and did continue to control his income and property as he had before he created the putative trust. As to the $ 1,750 deduction claimed by petitioner in 1975, that item was never identified. Respondent suggested *547 and petitioner denied that it was a payment to Educational Scientific Publishers. In any event, since petitioner failed to establish that he is fact paid that amount of money to anyone, the deduction is disallowed for lack of substantiation. As to the negligence additions imposed under section 6653(a), petitioner has the burden to establish that the underpayments of tax were not due to negligence or intentional disregard of rules and regulations. Vnuk v. Commissioner,supra;Bixby v. Commissioner,58 T.C. 757, 791 (1972). Petitioner has not sustained his burden of proof. While petitioner testified vaguely about certain alleged non-tax reasons for setting up the trust, such as avoiding probate or providing for an alcoholic relative, the Court did not believe this testimony. We think this was simply a transparent and flagrant tax avoidance scheme. Decision will be entered for respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years involved in this case, unless otherwise indicated.↩
2. Much of the trial of this case was consumed by petitioner's constitutional and other legal arguments, particularly his arguments that Federal Reserve Notes are not money and that he therefore did not receive any gross income or taxable income. All of these arguments raised at trial and in petitioner's post-trial briefs are frivolous and have been rejected by this and other courts so many times that citation of the case law is unnecessary. Moreover, some of petitioner's interpretations of case law, this Court's Rules of Practice and Procedure, and provisions of the Internal Revenue Code are rather bizarre and equally frivolous.↩
3. Some of petitioner's materials that were received in evidence bear a logo containing the wores "The Family Trust." Petitioner makes much of the fact that he is an unmarried person who has no children, but that fact is wholly irrelevant and immaterial. The "Family Trust" is simply a general descriptive term for the type of trust involved in this case, and its validity or invalidity, for Federal tax purposes, does not depend on the marital or family status of the creator and grantor of the putative trust.↩
4. Petitioner argues on brief that he has been taxed twice on certain amounts. He is mistaken.↩
5. These five opinions of the Tax Court are just a sampling. The Court has decided and written opinions in at least 35 other family trust cases, most of which have been published as Memorandum Opinions of the Court.↩