LAMAR F. MONESMITH and JUDY G. MONESMITH, Petitioners v COMMISSIONER OF INTERNAL REVENUE, Respondent
Monesmith v. Commissioner
Docket Nos. 12397-81, 12406-81.
United States Tax Court
T.C. Memo 1983-345; 1983 Tax Ct. Memo LEXIS 446; 46 T.C.M. (CCH) 446; T.C.M. (RIA) 83345; June 13, 1983. John K. Ross, for the petitioners. James J. Posedel, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent *448 determined deficiencies in petitioners' income tax in the amounts of $6,975, $4,793 and $7,047 for the calendar years 1976, 1977 and 1978, respectively, and additions to tax under section 6653(a) [1] of $349, $240 and $352 for these respective years. The issues for decision are: (1) Whether income reported by the Lamar Monesmith Family Trust is properly taxable to petitioners under the provisions of sections 671 through 678; (2) whether all or any part of the $10,000 fee paid by petitioners in 1976 in connection with the establishment of the Lamar Monesmith Family Trust and for the preparation of tax returns is deductible in that year; and (3) whether petitioners are liable for the additions to tax under section 6653(a). FINDINGS OF FACT Lamar F. Monesmith and Judy G. Monesmith, husband and wife, who resided in Billings, Montana, at the time of the filing of the petitions in this case filed joint Federal income tax returns for the calendar years 1976, 1977 and 1978 on the cash basis method of accounting. On May 8, 1976, Lamar *449 F. Monesmith (petitioner) executed a "Declaration of Trust of This Pure Trust" purporting to create the Lamar Monesmith Family Trust (the Family Trust).On May 10, 1976, petitioner Judy G. Monesmith, by quitclaim deed which was recorded in the records of Yellowstone County, Montana, the same day, purported to transfer her interest in certain properties she held jointly with petitioner to petitioner. Mrs. Monesmith's transfer of her interest in the property was made with the expectation that units of beneficial interest in the trust would be transferred to her. On May 11, 1976, petitioner executed a quitclaim deed which was recorded in the Yellowstone County records. The deed purported to transfer to the Family Trust the properties which petitioner and Mrs. Monesmith had owned jointly until Mrs. Monesmith's conveyance of her interest to petitioner. On May 11, 1976, petitioner and Mrs. Monesmith executed bills of sale purporting to transfer personal property and furnishings to the Family Trust. This property was physically situated in petitioner's and Mrs. Monesmith's residence and in various rental properties which they owned. The trustees of the Family Trust through the years *450 1976, 1977 and 1978, consisted of petitioner, Mrs. Monesmith and their adult daughter, Jelena Campbell. On May 13, 1976, petitioner was named executive trustee of the Family Trust and Mrs. Monesmith was appointed as the trust's executive secretary. Jelena Campbell signed an undated resignation from the board of trustees, which resignation could be accepted at any time. One hundred of the beneficial interest units represented 100 percent of the beneficial interest in the Family Trust. From the creation of the Family Trust to May 13, 1976, petitioner held all 100 units of beneficial interest. On May 13, 1976, petitioner's certificate of beneficial interest was canceled and the 100 units were reissued, 50 to Mrs. Monesmith and 50 to petitioner. Two days later the units of beneficial interest were redistributed, 50 to Mrs. Monesmith and 50 to Jelena Campbell. The Family Trust's fiscal year was from May 1 to April 30. Part of the property transferred to the Family Trust by petitioner and Mrs. Monesmith consisted of a four-plex apartment in Billings, Montana. Until the creation of the Family Trust, petitioners had owned this four-plex jointly and they lived in apartment No. *451 2 of the four-plex. During the years here in issue they continued to live in apartment No. 2 of the four-plex and paid no rent to the Family Trust therefor. The Family Trust paid the utility bills and expenses connected with the repair and upkeep of the apartment in which petitioners resided. The personal property transferred by petitioners to the Family Trust which consisted of the furnishings in the apartment in which petitioners resided was used by petitioners, but they paid no rent to the Family Trust for the use of these furnishings. The Family Trust also paid petitioners' dental bills, health and life insurance premiums, automobile expenses and various other expenses.
The Family Trust established by petitioners was a trust suggested to them by an organization known as Estate Guardian Educational Trust (E.G.E.T.). The trust instrument provided for action by a majority of the trustees, meetings of the trustees, the powers of the trustees, and administration and management of the trust. It contained the following provision: The above named Trustees, for themselves and their successors IN TRUST, do hereby agree to accept properties real and personal to be conveyed and acknowledge *452 acceptance of and delivery of all of the property specified, together with all the terms of The Trust herein set forth, agreeing to conserve and improve The Trust, to invest and reinvest the funds of said Trust in such manner as will increase the financial rating of The Trust (Estate) during the period of outstanding liabilities of the various properties and enterprises in commerce for gain, exercising their best judgment and discretion, in accordance with The Trust Minutes, making distributions of portions of the proceeds and income as in their discretion, and according to the minutes, should be made, making complete periodic reports of business transactions, and upon final liquidation distribution the assets to the beneficiaries as their interests may appear; and in all other respects administering said Trust (Estate) in good faith strictly in conformity hereto. Petitioners learned of E.G.E.T. in a meeting they attended in Billings, Montana. They signed up for the trust and made a partial payment of the $10,000 fee, which was the amount charged them for the establishment of the trust and certain other services, before consulting with an attorney. They later talked with an individual, *453 John Matonis, who was represented to them to be an attorney for E.G.E.T. They asked Mr. Matonis, or were told by Mr. Matonis without inquiring, that the trust was effective for Federal tax purposes. The $10,000 fee which petitioners paid for having the trust set up and for information on administering the trust and methods of bookkeeping, entitled them to have their personal income tax returns and the trust returns prepared for 2 years without additional charge. The value of preparing petitioners' personal tax returns Form 1040 included in the $10,000 was $300. On their personal income tax returns for the calendar years 1976, 1977 and 1978, petitioners reported as income for the period after May 10, 1976, only amounts designated as trustee's fees and, in one instance, as a distribution from the trust of Mrs. Monesmith. They reported for the years 1976 and 1977 petitioner's income as an employee of the City of Billings, but deducted on their returns the amounts applicable to the period after May 10, 1976, with the explanation that the services of petitioner had been irrevocably assigned to the Family Trust. [2] Petitioners on their return for 1976 reported the income from and *454 deducted expenses applicable to rental properties for the period January 1 through May 10, 1976. For the period after May 10, 1976, this income was reported and the expenses claimed as deductions by the Family Trust. Petitioners on their Federal income tax return for 1976 claimed a deduction for $10,000 with the explanation "Educational materials, attorney fees to conserve and maintain assets." At the trial, petitioners contended that some portion of the $10,000 was for tax planning and for the preparation of petitioners' personal income tax returns. Respondent in his notice of deficiency determined that the income and deductions claimed by the Family Trust were properly the income and deductions of petitioners. Since the trust used a fiscal year ending April 30 and petitioners reported their income on a calendar year basis, respondent adjusted the income *455 and expenses reported by the Family Trust to a calendar year basis. Respondent also reduced petitioners' income as reported by amounts reported as trustees' fees and a trust distribution on the theory that these amounts were a return of trust corpus. [3]
OPINION Since petitioners have conceded that they are taxable on petitioner's earnings from the City of Billings, and there is no issue as to the amounts of income and deductions with respect to the rental properties, the only remaining question with respect to the taxability of the Family Trust income to petitioners is whether the amounts of such income are taxable to petitioners under sections 671 through 678 of the Internal Revenue Code. Section 677(a) of the Code provides that-- The grantor shall be treated as the owner of any portion of a trust, whether or not he is treated as such owner under section *456 674, whose income without the approval or consent of any adverse party is, or, in the discretion of the grantor or a nonadverse party, or both, may be-- (1) distributed to the grantor or the grantor's spouse; Here, both petitioner and Mrs. Monesmith were grantors since Mrs. Monesmith conveyed her interest in the property which she and petitioner jointly owned to petitioner with the understanding that she would receive units of beneficial interest in the Family Trust. See Vnuk v. Commissioner,621 F.2d 1318, 1321 (8th Cir. 1980), affirming a Memorandum Opinion of this Court. The facts in this case are virtually identical to the facts in Vercio v. Commissioner,73 T.C. 1246 (1980). In fact, the provisions of the trust instrument in this case are the same in all material respects as the provisions of the trust involved in the Vercio case. In that case, the husband and wife were the trustees along with their two children, each of whom had signed an undated resignation as trustee. In the Vercio case we pointed out that by no stretch of the imagination was the consent of the taxpayer's two children required for any action by the trustees *457 when any objection by them to their parents' action could be avoided by acceptance of their resignation. In the Vercio case we discussed at some length whether a wife and husband could be considered as adverse parties within the meaning of section 677.We concluded that they were not adverse parties, quoting from section 1.677(a)-1(b)(2), Income Tax Regs. In that case we concluded, on facts substantially the same as the facts in the present case, that the trust income was taxable to the grantors since the income of the trust was distributable to the grantors without the consent of an adverse party. Under these circumstances, no useful purpose would be served by going into a detailed discussion of the various provisions taxing the income from a trust, such as that involved in the instant case, to the grantors. See the discussion in Vercio v. Commissioner,supra at 1255-1259. [4]
Likewise, petitioners have totally failed to show that any part of the $10,000 paid to E.G.E.T. is deductible, except the amount paid for preparation of petitioners' personal income tax returns. Advice pertaining *458 to rearrangement of property or general matters concerning a trust are non-deductible personal expenditures within the meaning of section 262. Epp v. Commissioner,78 T.C. 801, 805 (1982); Luman v. Commissioner,79 T.C. 846, 857-858 (1982). Petitioners were not even able to testify with any degree of detail as to what they received for the payment other than the preparation of tax returns. Petitioners testified generally as to receiving advice about setting up a bookkeeping system. However, it would appear that any such advice they received would have been a capital expenditure. If any portion of the payment was allocable to the predrafted minutes with which petitioners were furnished, such portion of the payment was an expense of setting up the trust and not a deductible expense or an expense for the production of income. On the basis of this record, we conclude that petitioners have failed to show that any portion of the $10,000 payment is deductible except the amount which petitioners have shown to be allocable to the preparation of their personal Federal tax returns. There is much evidence in the record with respect to the amount of the *459 $10,000 payment properly applicable to the preparation of petitioners' personal Federal tax returns. After considering all the evidence on this issue we have concluded that petitioners have established that $300 of the $10,000 payment was properly allocable to the fee for preparation of their personal Federal income tax returns. Any expenditure made for the preparation of the tax returns of the Family Trust would be an expense of the trust and not an amount deductible by petitioners. Section 212(3) permits the deduction of amounts paid "in connection with the determination, collection or refund of any tax." We conclude that the facts of this case are such as to bring the $300 which we have allocated to the preparation of tax returns within the scope of this provision. We therefore hold that petitioners are entitled to deduct $300 in 1976. The final issue is whether petitioners are liable for the additions to tax under section 6653(a). Petitioners argue that they should not be liable for the additions to tax for negligence or disregard of rules and regulations provided for in section 6653(a) since they had consulted an attorney with respect to the validity of the trust. *460 Under certain circumstances, reliance by a taxpayer on the advice of an attorney may constitute a showing that the addition to tax under section 6653(a) is not proper. However, the facts here do not support the conclusion for which petitioners argue. Petitioners hade made some payment on the $10,000 fee and decided to enter into the trust before they talked with any attorney. They then did not talk to any local attorney in Billings, Montana, but rather talked with a person who was represented to them to be an attorney for E.G.E.T. when he was visiting Billings. In our view, this type of advice which petitioners received would not be relied on by a reasonable person in making a business decision. Considering the facts here as a whole, we conclude that petitioners have totally failed to show that some part of their underpayment in tax was not due to negligence or intentional disregard of rules and regulations within the meaning of section 6653(a). See Wesenberg v. Commissioner,69 T.C. 1005, 1015 (1978). We therefore conclude that petitioners are liable for the additions to tax under section 6653(a). Decisions will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years here in issue.↩
2. Petitioners at the trial conceded that petitioners's income from the City of Billings is properly taxable to him and that the deduction claimed on their returns was an improper assignment of income. Therefore, there is no longer an issue in this case with respect to petitioner's income from the City of Billings.↩
3. The details of respondent's adjustment are not set forth since at the trial no issue was raised with respect to respondent's determination of the income and deductions from the various rental properties which petitioners would be required to report and entitled to deduct if the Family Trust income is taxable to them.↩
4. See also, Hoelzer v. Commissioner,T.C. Memo. 1982-6↩.