RAYMOND S. BENSON and BARBARA G. BENSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Benson v. Commissioner
Docket Nos. 14177-78, 28467-81.
United States Tax Court
T.C. Memo 1983-458; 1983 Tax Ct. Memo LEXIS 332; 46 T.C.M. (CCH) 955; T.C.M. (RIA) 83458; August 4, 1983
*332 Petitioners purportedly transferred to a family trust most of their business and personal assets, including their home, petitioner-husband's office equipment, and their lifetime personal services and all remuneration therefrom. Petitioners continued to use their home and personal assets, and petitioner-husband continued to use his office equipment in his accounting practice. Held: (1) The trust was devoid of economic reality and is not recognizable for Federal income tax purposes. (2) In docket No. 28467-81, petitioners are liable for additions to tax under section 6653(a), I.R.C. 1954. (3) Respondent's request for damages under section 6673 in docket No. 14177-78 is denied because the record does not establish that petitioners instituted that proceeding merely for delay. Gloria T. Svanas, for the petitioners. Deborah A. Butler, for the respondent. CHABOT
MEMORANDUM FINDINGS OF FACT AND OPINION CHABOT, Judge: Respondent determined deficiencies in Federal individual income tax and additions to tax under section 6653(a)[1] *333 (negligence, etc.) against petitioners as follows: Additions to Tax
Docket No.
Taxable Year
Deficiency
Sec. 6653(a)
14177-78
June 30, 1975
$357.00
June 30, 1976
4,115.00
28467-81
June 30, 1977 [2]
3,756.00
$188.00
June 30, 1978 [2]
8,279.00
414.00 These cases have been consolidated for trial, briefs, and opinion. The issues for decision [3] are as follows: (1) Whether income and expenses are attributable to petitioners or to the Raymond S. Benson Equity Trust; (2) Whether petitioners are liable for additions to tax under section 6653(a); and (3) Whether petitioners are liable for damages under section 6673 for instituting proceedings before this Court merely for delay. [4] *334 FINDINGS OF FACT Some of the facts have been stipulated; the stipulations and the stipulated exhibits are incorporated herein by this reference. When the petitions in the instant cases were filed, petitioners Raymond S. Benson (hereinafter sometimes referred to as "Raymond") and Barbara G. Benson (hereinafter sometimes referred to as "Barbara"), husband and wife, resided in Auburn, California. Raymond is licensed by the State of California as a public accountant, and has been practicing public accounting since about 1954. A substantial part of his practice has involved the preparation of Federal income tax returns. During 1974, Raymond attended two conferences sponsored by Educational Scientific Publishers (hereinafter sometimes referred to as "ESP") at which the concept of the "equity" or "family" trust was discussed. A number of attorneys and accountants associated with ESP talked at the seminars. Raymond asked two attorneys he was acquainted with if the claims made by ESP as to the advantages of family trusts were valid. One attorney would not give an opinion, while the second indicated *335 that he did not think the trust would work. Neither attorney specialized in tax matters. Over the next few years, Raymond attended several additional seminars presented by ESP. Raymond had no other discussions with attorneys or accountants as to the Federal tax consequences of creating a family trust. On March 31, 1975, Raymond executed a document captioned "Declaration of Trust of This Pure Trust". The trust indenture was published by ESP and consisted of a preprinted form with blank spaces provided for applicable names. Raymond paid $3,500 in 1975 for the trust form, and ESP study manual explaining the family trust concept, and other materials printed by ESP. The trust was entitled the "Raymond S. Benson Equity Trust" [5] *336 (hereinafter sometimes referred to as "the trust"). The initial trustees of the trust were Dolores Logan (hereinafter sometimes referred to as "Logan") and Barbara. On April 1, 1975, Raymond became a trustee of the trust. Logan resigned on March 23, 1976. Bradley Gene Benson and Rodney Earl Benson (hereinafter sometimes referred to as "Bradley" and "Rodney", respectively), the sons of Barbara and Raymond, were appointed trustees on March 24, 1976. On March 31, 1975, Barbara purportedly conveyed her interest in certain properties and her lifetime services to Raymond in order to facilitate reconveyance to the trust. On April 1, 1975, Raymond purportedly conveyed to the trust various items of real and personal property, including petitioners' personal residence, two parcels of land (on one of which petitioners were building a home), the contents of the residence, life and fire insurance policies, and office equipment and furniture from Raymond's Office. Additionally, Raymond purportedly conveyed to the trust the exclusive use of his and Barbara's "lifetime services and all of the currently earned remuneration accruing therefrom." On March 31, 1975, Raymond received 100 units of beneficial interest, which constituted all the units of beneficial ownership of the trust. Raymond transferred 50 units to Barbara on April 1, 1975. On April 2, 1975, Raymond transferred an additional 30 units to Barbara, 10 units to Bradley, and 10 units to Rodney. Barbara transferred 10 units each to Bradley and Rodney on April 4, 1976. The units of beneficial interest were evidenced *337 by certificates that conveyed to the owner solely the "emoluments" as distributed by the action of the trustees. The certificates conveyed no interest in the trust assets, or in the management of the trust. Raymond and Barbara were the trust's executive trustee and executive secretary, respectively, having been nominated, elected, and appointed to these positions on April 1, 1975. All decisions concerning the trust were made by petitioners. Raymond established the Raymond S. Benson Accounting Corporation [6] (hereinafter sometimes referred to as "the corporation") on April 11, 1975. By a document dated April 1, 1975, and styled "Agreement", the trust and the corporation entered into an agreement whereby (1) the trust agreed to provide the services of an accountant and an office manager to the corporation, and (2) the corporation agreed to pay to the trust 55 percent of the gross income of the corporation plus "all fringe benefits, if any, currently provided employees of the [corporation] performing like services." These services were subsequently provided by Raymond and Barbara, respectively. By documents dated April 1, 1975, and April 2, 1975, both styled "Lease Agreement", the *338 trust agreed to lease certain office equipment and furniture to the corporation. The leased items were among the items purportedly conveyed to the trust by Raymond on April 1, 1975. Petitioners opened a checking account for the trust. Both petitioners had signature authority on the trust checking account. Petitioners used the trust account to pay their personal expenses, such as the utilities, maintenance, and mortgage payments on their personal residence, and their medical expenses. After petitioners' residence and household goods were purportedly transferred to the trust, petitioners continued to live in the residence and use the household goods. For its taxable years ending on June 30 of 1975, 1976, 1977, and 1978, the corporation deducted as management fees $7,010, $33,251, $34,669, and $51,550, respectively. For its taxable years ending March 31 of 1976, 1977, and 1978, the trust reported "contract income" or "other income" of $28,212, $38,592, and $47,506, *339 respectively. Petitioners reported various consultant fees, trustee fees, and distributions from the trust as income on the income tax returns they filed for the taxable years before the Court. In the notices of deficiency, respondent disregarded the trust and made adjustments in order to tax petitioners as if the trust had not been created. Respondent treated the management fees paid by the corporation to the trust as salary paid to petitioners, and attributed interest income, rental income, partnership income, capital gain income, and allowable deductions reported by the trust on its Form 1041 to petitioners. Derivative adjustments were also made, including subtracting trust income reported and adjusting Raymond's self-employment tax liability. For the taxable year ending June 30, 1975, respondent disallowed the deduction taken by the petitioners for the $3,500 paid for the ESP materials. OPINION I. The Family Trust
Petitioners maintain that they transferred property to the trust and thus surrendered their dominion and control over those assets to the trust, and that the trust was a viable tax-paying entity. Petitioners state that there "is stark economic reality in the divestiture *340 of rights" in this case. [7] Respondent relies on the following three reasons for asserting that the trust should be disregarded for purposes of determining petitioners' Federal income tax liabilities: (1) the trust lacks economic reality and is a mere paper sham used for tax avoidance purposes; (2) the trust effects an anticipatory assignment of income; and (3) the grantor trust provisions of sections 671-677 apply. We agree with respondent. This case involves yet another attempt to escape taxation by transferring property to a "family trust". On numerous occasions this Court and the United States Courts of Appeals have considered similar attempts and the taxpayers' attempts to shift the incidence of taxation have been rejected. E.g., Hanson v. Commissioner,696 F.2d 1232 (CA9 1938), affg. a Memorandum Opinion of this Court; [8]Schulz v. Commissioner,686 F.2d 490 (CA7 1982), affg. Memorandum Opinions of this Court; [9]Gran v. Commissioner,664 F.2d 199 (CA8 1981), *341 affg. a Memorandum Opinion of this Court; [10]Luman v. Commissioner,79 T.C. 846 (1982), and cases cited therein at 852, n. 4. See Mertsching v. United States,704 F.2d 505, 506 (CA10 1983). But see May v. Commissioner,76 T.C. 7 (1981), on appeal (CA9, Nov. 1, 1982). We have held that a "family trust" lacked economic substance and was a nullity for Federal income tax purposes. Hanson v. Commissioner,supra;Markosian v. Commissioner,73 T.C. 1235 (1980). The instant cases present nothing which would support a different result. After creation of the trust, petitioners continued to use the trust assets as they had before, and petitioners exercised full control over the income generated by the trust assets.For the reasons carefully explained in Markosian v. Commissioner,supra, we find that the trust lacked economic substance and thus is not recognizable for Federal tax purposes. [11] *342 Since we have determined that the trust is not recognizable for Federal income tax purposes, we need not address respondent's additional arguments in any great detail. However, it is clear that respondent's application of assignment of income principles and the grantor trust provisions to this case are also proper. See, e.g., Hanson v. Commissioner,supra;Vnuk v. Commissioner,621 F.2d 1318 (CA8 1980), affg. a Memorandum Opinion of this Court; [12]Luman v. Commissioner,supra;Vercio v. Commissioner,73 T.C. 1246 (1980); Wesenberg v. Commissioner,69 T.C. 1005 (1978). We hold for respondent on this issue. II. Additions to Tax--Section 6653(a)
An addition to tax under section 6653(a) is imposed if any part of any underpayment of tax is due to negligence or intentional disregard of rules or regulations. Petitioners have the burden of proving that their underpayments of tax were not due to negligence or intentional disregard of rules and regulations. Hanson v. Commissioner,696 F.2d at 1234. *343 Not only have petitioners failed to carry this burden, but the record is clear that petitioners were negligent and intentionally disregarded rules and regulations. Petitioners' assertion that they relied on the advice of "Tax Counsel" is not supported by the record. Petitioners embarked on the scheme solely in reliance on the claims of ESP representatives. The two independent attorneys that Raymond did consult with refused to give an opinion that the family trust scheme would produce the desired results. Indeed, "[n]o competent lawyer could" so advise them. Hanson v. Commissioner,696 F.2d at 1234. As a practicing accountant in a practice that involved the Federal income tax laws, Raymond had to know that the scheme was in conflict with clear principles of Federal income tax laws. As the Court of Appeals for the Ninth Circuit stated, "No reasonable person would have trusted this scheme to work." Hanson v. Commissioner,supra at 1234. Petitioners cite Hoelzer v. Commissioner,T.C. Memo. 1982-6, for the proposition that the section 6653(a) addition to tax should not be imposed if a taxpayer shows good faith reliance on ESP. Our reading of the opinion in Hoelzer indicates that the *344 petitioners therein relied on an independent accountant who signed as preparer of their income tax returns. Further, the petitioners in Hoelzer did not have the professional expertise in preparing Federal income tax returns that Raymond has. We hold for respondent on this issue. III. Damages Under Section 6673
Respondent has asked the Court to award damages of $500 under section 6673 [13] *345 in docket No. 14177-78. The information in the record in the instant cases is not sufficient to enable us to conclude that, when petitioners filed their petition in 1978, they did so merely for delay. Accordingly, it is not appropriate to impose damages under section 6673. To reflect the foregoing, Decisions will be entered for respondent.
Footnotes
1. Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1954 as in effect for the taxable years in issue. 2. The notice of deficiency in docket No. 28467-81 refers to taxable years ending July 31 of 1977 and 1978. The parties stipulate that this is a typographical error and that June 30 is the correct month and day for each of these years.↩
3. At trial, petitioners waived their claim to recovery of their attorney's fees and costs under the Equal Access to Justice Act, and waived their contention that respondent had the burden of proof. Also, by stipulation, petitioners concede the statute of limitations contention they had raised in their petition as to the taxable year ending June 30, 1977. ↩
4. In the answer in docket No. 14177-78 respondent asked the Court to impose damages in the amount of $500 under section 6673.
5. The trust's name was changed to "RAYBAR Trust" on December 16, 1980.
6. The corporation's name was changed to Raymond S. Benson Accountancy Corporation on July 14, 1975. Respondent has not suggested that the corporation should not be recognized as a separate entity for Federal tax purposes.↩
7. The parties have stipulated that if the Court finds in its opinion that the trust is not recognizable for Federal tax purposes, then the determinations of deficiencies by respondent as set forth in the notices of deficiency are correct.↩
8. T.C. Memo. 1981-675↩. 9. T.C. Memo. 1980-568, and T.C. Memo. 1981-73↩. 10. T.C. Memo. 1980-558↩.
11. Since this Court has determined that the trust is not recognizable for Federal tax purposes, the stipulation cited in n. 7, supra, becomes operable. Thus, the Court need not address the question of whether petitioners' payment of $3,500 for ESP materials is deductible under section 212, as claimed in their petition. In any event, see Luman v. Commissioner,79 T.C. 846↩ (1982).
12. T.C. Memo. 1979-164↩.
13. SEC. 6673. DAMAGES ASSESSABLE FOR INSTITUTING PROCEEDINGS BEFORE THE TAX COURT MERELY FOR DELAY. Whenever it appears to the Tax Court that proceedings before it have been instituted by the taxpayer merely for delay, damages in an amount not in excess of $500 shall be awarded to the United States by the Tax Court in its decision. Damages so awarded shall be assessed at the same time as the deficiency and shall be paid upon notice and demand from the Secretary and shall be collected as a part of the tax. [In actions or proceedings commenced after December 31, 1982, this Court may impose damage up to $5,000 if the proceedings have been instituted primarily for delay, or the taxpayer's position in such proceedings is frivolous or groundless. See section 292(b), Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, 96 Stat. 324, 574.]