ROBERT F. FERGEN and COLLEEN A. FERGEN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Fergen v. Commissioner
Docket Nos. 12673-81, 4522-82.
United States Tax Court
T.C. Memo 1984-23; 1984 Tax Ct. Memo LEXIS 650; 47 T.C.M. (CCH) 906; T.C.M. (RIA) 84023; January 11, 1984. Stephen W. Hagan and Mobley M. Milam, for the petitioners. H. Steven New, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in petitioners' income taxes and addition to taxes for the years and in the amounts as follows: Deficiencies
Taxable
in
Additions to Tax, I.R.C. 1954 [1]
Year
Income Tax
Sec. 6651(a)(1)
Sec. 6653(a)
1976
$4,235
$212
$631
1977
14,162
708
1978
12,164
608
The issues for decision are (1) whether petitioners, as co-grantors of a family trust, should be treated during the calendar years 1976, 1977 and 1978 as the owners of the entire trust, and therefore taxable on the entire income of the trust under sections 671 through 678; [2] (2) whether petitioners are entitled to deduct the amount they paid for forms and instructions which they utilized in establishing a trust, which they entitled "R. F. Fergen Equity *653 Trust," either as a business expense or as an expense for the management, conservation or maintenance of property held for the collection of income; (3) whether a part of the underpayment of petitioners' income taxes in each of the years here in issue was due to negligence or intentional disregard of rules and regulations; and (4) whether petitioners failed to timely file their Federal income tax return for the calendar year 1976. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife, who resided in LaMesa, California, at the time of the filing of the petitions in this case, filed joint Federal income tax returns, Forms 1040, for the calendar years 1976, 1977 and 1978 with the Director, Fresno Service Center, Fresno, California. *654 On or about July 29, 1976, Robert F. Fergen, as grantor, and Colleen A. Fergen and Constance J. Fergen, as trustees, signed a document entitled "Declaration of Trust." Constance J. Fergen is one of petitioners' daughters. In July 1976 she was 21 years old and had been attending college. This document recited that the declaration authorized the trustees to operate under the name of "R. F. Fergen Equity Trust." The instrument further recited that there shall not be less than two trustees, but the number may be increased. The trustees were given broad powers of management of trust assets and assets to be acquired by the trust. The document also provided that the trustees may, in their discretion, elect among their number a president, secretary and treasurer, or any other officers they deemed expedient, and that any trustee may hold two or more offices simultaneously. The document further recited that the declared purpose of the trust shall be to accept right, title and interest in and to real and personal property, whether tangible or intangible, conveyed by the creator and grantor to be the corpus of the trust, and that included therein is the exclusive use of the grantor's lifetime *655 services and all of his earned remuneration accruing therefrom. Mrs. Fergen also purportedly transferred to the trust her lifetime earnings. The trust recited that it was to last for a period of 25 years and was to be irrevocable, except that the trustees might unanimously determine upon an earlier date for the cessation of the trust. The trust provided for 100 certificates of beneficial interest. Initially, all 100 certificates were issued to Robert F. Fergen under date of July 30, 1976. Under the same date, certificates were reissued with 50 units of beneficial interest to Colleen A. Fergen and 50 units to Robert F. Fergen; and on July 31, 1976, the certificates were reissued, 10 to Robert F. Fergen, 30 to Colleen A. Fergen, 20 to Constance J. Fergen, 20 to Gina T. Fergen (petitioners' other daughter), 5 to Bernice Fergen (Robert F. Fergen's mother), 5 to Fred Fergen (Robert F. Fergen's father), 5 to Zelma Tinker (Colleen a. Fergen's mother), and 5 to Leonel Tinker (Colleen A. Fergen's father).
On or about July 29, 1976, Colleen A. Fergen (Mrs. Fergen) transferred to Robert F. Fergen (Mr. Fergen) her interest in their jointly held property, which consisted of their personal *656 residence and all personal property and household furnishings located therein, four parcels of rental property, the stock of Fergen Company, Inc., and a mutual fund and commodities account. Mrs. Fergen made this transfer to Mr. Fergen for the specific purpose of facilitating the reconveyance of the property by Mr. Fergen to the trust. On or about July 29, 1976, Mr. Fergen transferred to the trust certain property consisting of the personal residence and all the personal property and household furnishings located therein, four parcels of real property, all shares of stock of Fergen Company, Inc., and a mutual fund and commodities account, which transfer included the interest in this same property which had been transferred to him by Mrs. Fergen. Also transferred to the trust were insurance policies on the life of Mr. Fergen and on the life of Mrs. Fergen, Checking accounts and savings accounts. The transfer included all the furnishings of the home in which Mr. and Mrs. Fergen resided with their two daughters. On July 30, 1976, the trustees elected Mr. Fergen as a trustee for life and elected him as the executive trustee of the trust. On this same date, Mrs. Fergen was elected *657 as a trustee of the trust for life and elected as the executive secretary of the trust. The trust provided that the executive trustee and the executive secretary of the trust should reside in "THIS TRUST'S Headquarters," which was the home in which Mr. and Mrs. Fergen had been residing with their two daughters prior to the creation of the trust. The action on July 30, 1976, also provided that a majority of the trustees could set remuneration for the executive trustee and the executive secretary of the trust. If further provided that in consideration of the services of the executive trustee and the executive secretary, the following should be provided to them and that these provisions might be changed from time to time by the affirmative action of a majority of the board of trustees: (1) All transportation expense incident to all trust business; (2) all traveling expense incident to all trust business: (3) all selling expense incident to all trust business; (4) all office expense incident to all trust business; (5) all dues, fees and subscriptions incident to all trust business; (6) all entertainment and/or convention and meeting expenses incident to all trust business; (7) adequate *658 insurance and insurance to cover costs of medical care for the two officers; and finally, a reasonable monthly consultant's fee to be paid to the executive trustee and executive secretary of the trust. The minutes dated July 30, 1976, containing the above-recited provisions were signed by Mrs. Fergen and by Constance J. Fergen as trustees. The trust instrument provided that a trustee may resign or be removed from office by a resolution of unanimous concurrence of the remaining trustees if in their opinion said trustee shall have been guilty of fraud, malfeasance in office, gross neglect of duty, or for cause by a mandate of a court of competent jurisdiction. Prior to the creation of the trust and assignment of all their property and lifetime services thereto, Mr. and Mrs. Fergen were the sole shareholders of Fergen Company, Inc., and both were employees of Fergen Company, Inc., and received compensation from that company for their services, which compensation they reported on their joint Federal income tax returns. After creation of the trust, Mr. and Mrs. Fergen continued to provide the same services to Fergen Company, Inc., as they had provided theretofore, but the compensation *659 for their services was reported by the trust on its Fiduciary income tax returns and not reported by petitioners. After the creation of the trust, the Fergens paid no rent for their former residence or for the personal property and household furnishings located therein, which had been conveyed to the trust and in which they lived with their two daughters. Likewise, the trust paid all the expenses relating to the mortgage, taxes, repairs, maintenance and insurance on the residence in which the Fergens lived, the utilities attributable to the residence, the disability insurance for the Fergens and their medical expenses. The trust also paid amounts designated as "consulting fees" to Mr. Fergen and amounts designated as fees for "secretary and bookkeeping services" to Mrs. Fergen in the years 1976, 1977 and 1978 in amounts set by the trustees by a majority vote.No fee of any kind was paid to Constance Fergen for acting in the capacity of a trustee of the trust. Prior to the creation of the R. F. Fergen Equity Trust (the equity trust), petitioners had an A-B trust. mr. Fergen was dissatisfied with this trust because the trustee was a bank and, if he should die, the bank would *660 have complete control of the assets.Mr. Fergen learned of the equity trust by reading a book authored by an attorney for the American Institute of Individual Religious Studdies. Petitioners paid $5,315 for the forms and instructions they purchased to establish the R. F. Fergen Equity Trust. The trust filed a Fiduciary income tax return, Form 1041, for each of the calendar years 1976, 1977 and 1978. For the calendar year 1976, the trust reported on its Fiduciary income tax return total income of $20,735.60 and deducted total expenses of $16,875.73. Included in the income reported on the Form 1041 was interest income, gross rentals, capital gains, and "Contract Nominee Trustee" income of $8,184.05. Among the expenses were interest, taxes, depreciation and other expenses which included consulting fees paid to petitioners, utility and telephone expenses and other expenses on the residence in which petitioners resided.On its Fiduciary income tax return, Form 1041, for the calendar year 1977, the trust reported total income of $83,251.39 consisting of the same type items as reported on the 1976 Fiduciary return with "Contract Nominee Trustee" income being $25,200. On its 1977 Form 1041 the *661 trust claimed expenses consisting of the same type items as claimed on the 1.79 return, the consulting fees expense claimed being $7,415.40 and the bookkeeping and secretarial services expenses being $2,638.50. On its Fiduciary return, Form 1041, for the calendar year 1978, the trust reported income from the same sources as reported on the 1976 and 1977 Fiduciary returns and a small amount of dividends, but this year reported a small capital loss. An amount of $36,000 was reported as income by the trust as "Contract Nominee Trustee Fergen Company, Inc." On the 1978 Fiduciary income tax return, Form 1041, the trust claimed expenses of the same type claimed in the prior 2 years totaling $36,199.89, which included an amount as consulting fees of $8,400 and an amount as bookkeeping and secretarial services of $3,600. On their joint Federal income tax return, Form 1040, for the year 1976, petitioners reported income from wages and salaries received prior to July 30, and interest and dividend and rental income received prior to this date. They also included in income $500 designated as "Consulting Fees" received for services to the equity trust, and the amount of $1,158 and $386 as *662 Mrs. Fergen's and Mr. Fergen's respective shares of distributions from the trust. On this return, petitioners deducted the $5,315 paid for the forms and instructions utilized in establishing the trust as a "cost to maintain and conserve assets and/or minimize taxes ( I.R.C. 212)." In addition, they deducted an amount of $165 designated as "Income Tax Preparation." This amount was paid to an accountant unconnected with the entity from which petitioners purchased the materials for the trust. On their joint Federal income tax return, Form 1040, for the calendar year 1977, petitioners reported no salary or wages from Fergen Company, Inc., but did report $7,415 as income from "Consultant Fees" from the R. F. Fergen Equity Trust and $2,639 from that trust as "Secy & Bookkeeping Services." They also reported $2,401 and $800 as Mrs. Fergen's and Mr. Fergen's respective shares of distributions from the trust.
On their joint Federal income tax return for the calendar year 1978, petitioners reported no salary income but reported consulting fees in the amount of $8,400 and fees for bookkeeping and secretarial services in the amount of $3,600 received from the equity *663 trust and $7,370 and $2,457, respectively, as Mrs. Fergen's and Mr. Fergen's shares of distribution of income from the trust. Attached to the petition in this case is a copy of an application, Form 4868, dated April 10, 1977, requesting an automatic extension of time to June 15, 1977, to file petitioners' 1976 individual income tax return. On June 27, 1977, the joint individual income tax return, Form 1040, for petitioners for the taxable year 1976 was received by the Director, Fresno Service Center, Fresno, California, in an envelope which bore a postmark of June 22, 1977. Attached to this Form 1040 was an application signed by petitioners for automatic extension of time to file U.S. Individual Income Tax Return, Form 4868, bearing a date of June 21, 1977. Subsequent to the years here in issue, petitioners consulted an attorney with respect to the assignment of their lifetime services to the R. F. Fergen Equity Trust and were informed by the attorney that such an assignment was "not legal." Thereafter, they reported their salary income from Fergen Company, Inc., on their individual Federal income tax returns. Respondent in his notice of deficiency to petitioners for each *664 of the years here in issue included in their taxable income the income reported for the respective years by the R. F. Fergen Equity Trust, and from this income deducted the allowable expenses claimed by the trust and the amounts reported in each of the years as consulting fees and secretarial service fees from the trust and distributions from the trust. Respondent, for the year 1976, disallowed the $5,315 deduction claimed by petitioners as an expense of conservation of property under section 212. Respondent determined that a part of the underpayment of tax in each of the years was due to negligence or intentional disregard of rules and regulations, and that there was an addition to petitioners' tax for 1976 for failure to timely file their return. OPINION Since petitioners have conceded that they are taxable on their earnings from Fergen Company, Inc., in each of the years here in issue and have not raised an issue as to the amount of income received and deductions allowable with respect to the other assets purportedly transferred to the equity trust, there remains only the questions of the taxability to petitioners under the provisions of sections 671 through 678 of the income *665 reported by the trust from sources other than petitioners' earnings, the deductibility of the amount paid for the trust forms, and the propriety of the additions to tax determined by respondent. Section 677 (a) provides that-- The grantor shall be treated as the owner of any portion of a trust, whether or not he is treated as such owner under section 674, whose income without the approval or consent of any adverse party is, or, in the discretion of the grantor or a nonadverse party, or both, may be-- (1) distributed to the grantor or the grantor's spouse; Here, both Mr. Fergen and Mrs. Fergen were grantors, since Mrs. Fergen conveyed her interest in the property which she and Mr. Fergen jointly owned to Mr. Fergen with the understanding that it would be conveyed by him to the equity trust in which she would receive units of beneficial interest.See Vnuk v. Commissioner,621 F.2d 1318, 1321 (8th Cir. 1980), affg. a Memorandum Opinion of this Court. The facts here show that much of the income of the trust was actually distributed to Mr. and Mrs. Fergen. Income *666 of the trust was used for the upkeep of the home in which they lived and the payment of utility costs and other costs with respect thereto. It was also used for various expenditures such as medical expenses and life insurance for Mr. and Mrs. Fergen. In our view, because of the broad provisions of the trust, the balance of the income of the trust might in the discretion of the grantors be distributed to them without the consent of an adverse party. Petitioners contend, first, that the trustees were not authorized to distribute the income of the trust to Mr. and Mrs. Fergen but were obligated by their fiduciary duty to preserve the income for the owners of the units of beneficial interest of the trust. In our view, the facts in this record do not support petitioners' contention in this respect. The trustees were authorized to spend the trust funds for transportation expenses, traveling expenses, selling expenses, office expenses, dues, fees and subscriptions incident to all trust business, and to maintain adequate life insurance and insurance to cover costs of medical care for the trustees. In addition, they were authorized to pay consulting fees to the trustees. Since, under *667 the provisions of this trust, any activities of petitioners could be considered incident to trust business, in effect the trustees were authorized to spend all the trust income for their own benefit. The trustees were the persons who determined what constituted trust business. Petitioners further argue that even if the trustees were authorized to expend the entire trust income for their benefit, that their daughter, Constance, who was a trustee, was an adverse party since she owned 20 of the beneficial units of the trust. However, the record here is clear that trust action could be taken by a majority of the trustees and, in fact, a majority of the trustees could, for something that in their judgment was neglect of duty by a trustee, oust that trustee. Since the grantors of the trust, Mr. and Mrs. Fergen, were a majority of the board of trustees, they were authorized to act without the consent of an adverse party. Mr. Fergen was the executive trustee and Mrs. Fergen was the executive secretary of the trust. The record is clear that Mr. and Mrs. Fergen were the individuals who managed all the day-to-day activities of the trust. Their daughter, Constance, at the inception of *668 the trust was 21 years old and was living in the family home with her mother and father. It is questionable whether, under the circumstances here present and the evidence in this record, she could be considered an adverse party. However, since clearly mr. and Mrs. Fergen could act without her consent, they did, in the language of the statute, have the discretion to distribute all of the income of the trust to themselves without the consent of an adverse party. The facts here are quite similar to those in Vercio v. Commissioner,73 T.C. 1246 (1980). The provisions of the trust in this case are in most respects comparable to the provisions of the trust involved in the Vercio case. In the Vercio case we discussed the question of whether a wife and husband could be considered as adverse parties within the meaning of section 677. We concluded that they were not adverse parties, quoting from section 1.677(a)-1(b)(2), Income Tax Regs. In that case we discussed at some length our conclusion that the income of the trust was distributable to the grantor without the consent of an adverse party. Based on our holding in Vercio v. Commissioner,supra, *669 and the reasoning set forth at pages 1255-1259 of that case, we conclude that petitioners are to be considered as the owners of the entire trust properties in the instant case, since the income of the trust, without the approval or consent of any adverse party could be distributed to the grantor or the grantor's spouse. Petitioners have totally failed to show that any portion of the $5,315 that they paid to the American Institute of Individual Religious Studies is properly deductible under section 212 of the Code or any other section of the Code. This expenditure was an expenditure for advice pertaining to rearrangement of property or general matters concerning a trust, and for this reason constitutes a nondeductible personal expenditure within the meaning of section 262. Epp v. Commissioner,78 T.C. 801, 805 (1982); Luman v. Commissioner,79 T.C. 846, 857-858 (1982). Mr. Fergen specifically testified that the money was paid for the form to set up the trust and the form of the minutes to be used by the trust. Clearly, under our holdings in the Epp and Luman cases, the payments for these forms are not deductible. The record shows *670 that petitioners bought the material to set up the trust without consulting an attorney or the accountant who had done their accounting work. They relied solely on a book written by an attorney for the American Institute of Religious Studies. Under circumstances very similar to those here present, we have held that taxpayers are liable for the additions to tax under section 6653(a), and we so conclude herein. Wesenberg v. Commissioner,69 T.C. 1005, 1015 (1978).
The final issue in this case is whether petitioners are liable for an addition to tax under the provisions of section 6651(a)(1) for the year 1976 in the amount of $212 for failure to timely file their income tax return. The evidence clearly shows that petitioners' return was untimely. While the record is not clear whether petitioners in fact applied for an automatic extension to June 15, 1977, for the filing of their 1976 return prior to the due date of the return, it is clear that the return was not filed by June 15, 1977. The return was received by the director of the service center at Fresno, California, on June 27, 1977, in an envelope which bore a postmark date of June 22, 1977. Therefore, the *671 return was not filed by June 15, 1977. It appears from the amount of the addition to tax determined by respondent that he did not consider the return to be more than 1 month late. Petitioners have offered no explanation for their failure to file their return by the June 15, 1977, date, which would be the due date of the return, if in fact they had timely applied for an automatic extension. Under these facts we conclude that respondent properly determined the $212 addition to tax under section 6651(a)(1) for petitioners' failure to timely file their Federal income tax return for the year 1976. Decisions will be entered for the respondent.
Footnotes
1. Unless otherwise stated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years here in issue.↩
2. At the trial, petitioners conceded that they were properly taxable on their earnings which they had assigned to the trust. Therefore, the taxability of the income of the trusts to petitioners is concerned only with rental income from certain real property assigned by petitioners to the trust and income consisting of interest and dividends from securities assigned to the trust.↩